# THE MARYLAND TRUST COMPANY

*vs.*

## THE MAYOR AND CITY COUNCIL OF BALTIMORE,

ET AL.

*Baltimore City: assessments for benefits, and damages, for public improvements; not to be in excess of actual damages and expenses.*

Section 175 of Article 4 of the Public Local Laws, does not authorize the City of Baltimore, in a condemnation proceeding for opening a public highway, to assess an aggregate amount of benefits in excess of the total amount of the damages and expenses.                                    p. 49

The Legislature did not intend to authorize the city thus to make a profit out of such improvements, and could not have validly given the city such authority.            pp. 49, 52

Although the usual constitutional mandate enjoining equality and uniformity in taxation, does not generally apply to special assessments for local improvements, if a statute permitted a municipality to make such assessments in excess of the cost of the improvements and the expenses incident thereto, it would unquestionably be contrary to Article 15 of our Bill of Rights, for such assessments would require those so assessed to contribute to the support of the government, to the extent of the excess, as other taxpayers are not required to do.            pp. 50-51

As the city has no power to assess benefits which materially amount to more than the aggregate of damages and expenses, it is the duty of the Commissioners for Opening Streets to deduct the excess, if they find such, by allowing each assessment its proportion of the amount deducted. Their return should show that such deductions were made.                    p. 53

Upon failure of the Commissioners for Opening Streets to make such deductions, the Court can do so, on appeal to it.

p. 54

*Decided January 14th, 1915.*

Appeal from the Baltimore City Court. (DUFFY, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J. BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Joseph S. Goldsmith* and *Sylvan Hayes Lauchheimer* (with whom were *Joseph C. France* and *G. H. H. Emory* on the brief), for the appellant.

*S. S. Field, City Solicitor,* for the appellee.

BOYD, C. J., delivered the opinion of the Court.

This is the third appeal to this Court in reference to the assessment for alleged benefits to the owners of properties by reason of the improvements over, along and near Jones' Falls, now known as the Fallsway, made under the authority of Chapter 110 of the Act of 1910 (p. 639), and ordinances of the appellee passed under that Act. The first was that of the *P. B. & W. R. R. Co.* v. *Baltimore,* 121 Md. 504, and the other was that of the *Safe Deposit and Trust Co.* v. *Baltimore,* 121 Md. 522. In *Bond* v. *Baltimore,* 116 Md. 683, the Act itself and the ordinance passed in pursuance thereof were attacked, but both were sustained. The benefits assessed against the present appellant are $94.00, and it is admitted that its property will receive benefits from the condemnation

and opening of the Fallsway to the extent of that amount. While the amount involved in this appeal is small, we are informed that it is a test case—there being about 170 appeals pending in the lower Court, some of which relate to awards of damages.

The appellant filed a petition in the lower Court in which it was alleged that the benefits assessed were largely in excess of the aggregate amount of damages and expenses and prayed the Court to "decrease, proportionately, all assessments for benefits made by said Commissioners for Opening Streets, as shown by their aforesaid return, the said assessments to be decreased to such extent that the total amount of the benefit assessments shall not exceed the aggregate amount of the damages and expenses, to wit, the sum of $135,835.14."

The Court refused to grant that prayer of the petition, and an exception was taken to that ruling, which constitutes the first bill of exceptions. The appellant offered a prayer, which was refused, but we understand the exception taken to that ruling is not pressed. The Court granted two prayers offered by the City, which are as follows: First, "The Court rules as a matter of law, that it being admitted by agreement of counsel that the petitioner's property is actually benefited by the opening of the Fallsway to the amount of $94.00, the inquisition of the Court sitting as a jury should be for the sum of $94.00 benefits in this case." The second was, "The Court rules as a matter of law that it is impossible now to ascertain the total damages and expenses of opening the Fallsway, and therefore the Court can not cut down the benefits upon the petitioner, upon the contention that the aggregate benefits exceed the total damages and expenses." The appellant excepted to the granting of those prayers, and the action of the Court in granting them is presented by the second bill of exceptions.

The City's position is that, it being admitted that the appellant's property was benefited to the amount of the assessment, it makes no difference to the appellant whether the

aggregate benefits assessed exceed or fall short of the cost of the improvement, because the appellant can not be injured so long as its assessment does not exceed the actual benefit received by it. It also denies that the aggregate of the benefits assessed in this case exceeds the real cost of the improvement, and contends that no means are provided by law for doing what the petitioner asked the Court below to do. As the principal question argued, which we understand to be involved in all of the appeals in the lower Court on benefits, is whether under the Baltimore Charter the benefits can exceed the damages and expenses, we will first consider that.

As decisions already rendered by this Court on the subject can not be properly understood, unless we examine the statutes in force when they were made, it will be necessary to refer to them at some length. *Alexander* v. *Baltimore,* 5 Gill, 383, is a leading case. The Act of 1838, Chapter 226, gave the Mayor and City Council of Baltimore power to provide for laying out, opening, extending, etc., in whole or part, any street, etc., within the bounds of the city; to provide for ascertaining whether any, and what amount in value of damages will be caused thereby, and what amount of benefit will thereby accrue to the owner, etc., of any ground within or adjacent to the city, for which such owner ought to be compensated, or ought to pay compensation, "and to provide for assessing and levying, either generally on the whole assessable property of said city, or specially on the property of persons benefited, the whole or any part of the amount of damages and expenses which they shall ascertain will be incurred in locating, opening * * * any street, square, lane or alley within said city." An ordinance (No. 10) of the city, passed March 9th, 1841, to carry into effect the powers granted by the statute, directed the Commissioners, after ascertaining the amount of damages and expenses to be incurred in any case, to assess the same on all the ground and improvements within the city, the owners of which, as such, the Commissioners decided to be benefited—apportioning them in just propor-

tion, according to the value of the benefit, etc. The Act and ordinance were sustained in that case.

We do not understand it to be denied by the City Solicitor that under that Act the aggregate of benefits assessed could not exceed the total cost of the improvement, but his contention is that originally by an ordinance of 1866 (No. 26; approved April 3, of that year), and afterwards by the present charter (Act of 1898, Chapter 123), the provision was changed, and that now the Commissioners for Opening Streets are no longer limited in making assessments for benefits to the aggregate of damages and expenses. We will quote from that Act later. He further contends that the question has been settled by the decisions of this Court. The case of *Hawley* v. *Baltimore,* 33 Md. 270, is the principal one relied on. Expressions used in that opinion, if taken alone, might furnish some ground for that contention, but a careful examination of the whole opinion and the ordinance referred to in it, will show conclusively that it was not meant to decide, and the Court did not decide, what is now contended for. It is said that the ordinance of 1866, which was under consideration in *Hawley's case,* changed the law in force when *Alexander* v. *Baltimore* was decided, but while it is true it did make some changes in existing ordinances, it is equally true that it did not, as to affect the question now under consideration, and, moreover, that it could not have done so. The statute in force when *Hawley's case* was decided, and when the ordinance of 1866 was passed, was section 837 of Article 4 of the Local Code of 1860. The provisions in respect to this question were the same as in the Act of 1838. Indeed, that statute is precisely the same in the Code of 1888, Article 4, section 806, excepting the Act of 1878, Chapter 143, provided that the appeals authorized should be taken to the Baltimore City Court, instead of to the Criminal Court or the Superior Court as the Code of 1860 directed and it so continued until the Act of 1898. By it, as we have seen, the City was authorized, "to provide for

assessing and levying, either generally on the whole assessable property of said city, or specially on the property of persons benefited, the *whole or any part* of the amount of damages and expenses, which they shall ascertain will be incurred," etc.

Manifestly the city could not, under that power, assess and collect benefits for *more than the whole* amount of damages and expenses, for the simple reason that it was limited to *"the whole or any part."* And if the ordinance of 1866 had attempted to do so it would have been invalid, but the change made by that ordinance was that, instead of requiring the benefits to be so apportioned as to cover the whole amount of damages and expenses, it simply authorized the assessment of the direct benefits each one received, and if there was any deficiency the city was required to pay it. So when we find in *Hawley's case* the statement that "the Commissioners, whose duty it is to assess benefits arising from the opening of the streets, are authorized in making such assessment to assess only the *direct benefits;* these are such as actually and substantially accrue to the property holder, and are to be made without reference to the costs and expenses of opening the street," it can not be properly said, that the Court intended by that language to hold that the city could do what even a cursory reading of its charter powers before the Court would show it was not authorized to do. The Court was speaking with reference to the case before it, and the facts were that the Commissioners awarded the amount estimated as damages to Philip Hiss, and assessed upon all the adjacent ground and improvements certain sums amounting in the aggregate to a sum equal to the estimated damages and expenses for benefits, as will be seen by the report of the case. There was no such question as that now being considered before the Court. The opinion went on to say, "The ordinance alluded to changed the old system of assessment, under which the benefits assessed were required to be so apportioned as to cover the whole amount of expenses in-

curred. Then each party assessed had an interest in the assessment of another, whether for benefits or damages. But under the present ordinance, no such interest exists. Each assessment must stand upon its own merits. The benefits assessed *are not required to cover the expenses* of opening a street." If the City could have assessed "specially on the property of persons benefited" more than the damages and expenses, why could it not have assessed more, under the other provision in the statute "on the whole assessable property of said city"? Yet will anyone say that if the amount of the damages and expenses of an improvement had been ascertained to be $10,000.00, the city could have levied $15,-000.00 for that improvement? The Court only meant to say, what we have in effect since said, that under that ordinance the jury only passed on the assessment for benefits (when they were considering benefits) which had accrued to the particular property before them, and they were to assess such direct benefits as accrued, and not, as they would have done under the former ordinance, apportion the whole amount of damages and expenses between all of the properties benefited. But whether the aggregate of benefits could exceed the aggregate of damages and expenses was not raised or suggested, and hence there was no occasion to pass on it.

*Zion Church* v. *Baltimore,* 71 Md. 524, also cited by the appellee, simply decided that it was immaterial who held the title, as the assessment was made on the property without any reference to the state of the title. Nor is there anything in *Friedenwald* v. *Baltimore,* 74 Md. 116, which sustains the City's contention. That case decided that each owner of property affected had the right to a separate trial, and it was error to consolidate the twenty appeals, over the objection of the owners of property assessed for benefits. The Court concluded by saying: "Under the system now in force in Baltimore City, 'each assessment must stand upon its own merits.' It was so held in *Hawley's case,* where it is said: 'The benefits assessed are not required to cover the expenses of

opening a street. So far as they may go, they are to be appropriated to that purpose, but any deficiency in the amount is required to be paid by the city.' " There is no suggestion of a right in the city to assess more benefits in the aggregate than the damages and expenses. In the excellent work of Mr. Ritchie on the *"Laws of Municipal Condemnation in Maryland,"* in section 130, he refers to *Hawley* v. *City* and *Friedenwald* v. *City,* and what he says is a correct statement based on those authorities, but he was not considering or referring to such a question as we now have before us, and of course expressed no opinion on it.

We said in *Baltimore* v. *Smith & Schwarz Co.,* 80 Md. 458, that: "It seems clear that the two transactions of fixing damages or compensation, and of assessing benefits, are separate and distinct." We held that under the law as it then stood, an appeal from the amount of benefits assessed did not even bring up for review the damages allowed the same property owner—each case was on appeal to be tried separately, and the amount of damages or benefits, as the case might be, determined separately. But there is nothing in that case which intimates that the benefits in the aggregate can exceed the damages and expenses. As we have said in speaking of *Hawley's Case,* the statute, of course, would not have permitted it, if it had been attempted, regardless of the further objection whether such a statute could be validly passed. When that case was decided, the Act of 1878, Chapter 143 (Code of 1888, section 806), was in force. The decision therefore could not have meant that the benefits could, in the aggregate, exceed the damages and expenses, and no such question was suggested. On the contrary, the opinion itself shows that the benefits to be reviewed were only intended to be equal to the damages and expenses. After saying that the commissioners were required to fix the compensation to be paid to the owners for the ground or improvements to be taken, we continued: "They then ascertain the aggregate of such damages or compensation, and having

added the estimated expenses of the proceedings, they are prepared to furnish the city *with the cost of opening the street*. That part of their work is completed (subject, of course, to their right of revision, appeal, etc., as provided by the ordinance). The next step taken is to determine *where the money is to come from."* Does anyone doubt *what money* was meant? In the connection it was used, it only could mean the money with which the cost of making the improvement was to be paid. And the opinion then goes on to show where it is to come from, namely, from benefits assessed, and "if there is a shortage in the benefit column, the account is balanced by the city."

There is, then, no case in this State holding, or justifying the inference, that under the charter, prior to the Act of 1898, the aggregate of benefits could exceed the aggregate of damages and expenses, and in our judgment the language of the statutes prior to 1898 is too plain to admit of any question on that subject. Such being the charter prior to the present one, what is the change in it relied on? Section 175 provides that the commissioners shall ascertain whether any and what amount of value in damage will thereby be caused to the owner for which he ought to be compensated,· "and the said commissioners having ascertained the whole amount of damages for which compensation ought to be awarded, as aforesaid, and having added thereto an estimate of the probable amount of expenses which will be incurred by them in the performance of the duties required of them, as aforesaid; and also of the expenses incurred by the City Register by reason of said proceedings, shall proceed to assess all the ground and improvements within and adjacent to the city, the owners of which, as such, the said commissioners shall decide and deem to be directly benefited by accomplishing the object authorized in the ordinance aforesaid; and should the direct benefits, assessed as aforesaid, not be equal to the damages and expenses incurred, the balance of said expenses and damages shall be paid by the City Register, and provided for in the general levy."

It seems to us that to give that section the meaning contended for by the city would require us to go much further than either the history of such legislation or the language of this particular statute justifies. It must be conceded that it would work a most radical change in the proceedings by the Commissioners for Opening Streets. If it was intended to do what is claimed it did do, we know of no similar statute in this State, and have found none in the many authorities we have examined. The framers of that charter, who were amongst the most capable men of their day, were careful to provide for cases where the benefits were not equal to the damages and expenses incurred, and yet, if they had in view the probability or possibility of the amount of benefits in excess of the damages and expenses, they made no provision for what was to be done with the·excess.· Surely they would not have overlooked such an important matter, if they had intended to authorize such assessments. But they required the commissioners to *first* ascertain the whole amount of damages, the probable amount of expenses incurred by them, and the expenses incurred by the City Register, and *then* to proceed to assess the benefits—we say that because the section says, "and the said Commissioners *having ascertained* the whole amount * * * *shall proceed* to assess," etc. That strongly tends to show that it was assumed by the Charter Commission and the Legislature that the benefits would not exceed the damages and expenses—at least, that they never contemplated that such excess of benefits could be recovered. Without further discussing it, we are of the opinion that that section did not intend to authorize the amount of benefits to be in excess of the damages and expenses.

But we do not stop there, for we are satisfied that the Legislature not only did not intend to do so, but could not have validly authorized the city to thus make a profit out of such improvements. It would be contrary to every principle upon which the right to assess for benefits has been

sustained, and, so far as we have found, the authorities are unanimous against such contention, when rightly understood. We will content ourselves by referring to *Cyc.* and the text-books, as in the notes many authorities are cited, which will relieve us from otherwise referring to them.

The rule is thus stated: "Where the final estimate of the cost of an improvement has been made and approved, an assessment in excess of such estimate is invalid. If the cost of the work proves to be less than such final estimate and assessment, the assessment should be reduced accordingly." 28 *Cyc.* 1155. "It is plain that an assessment should not exceed the whole cost of the work for which the assessment is laid. Any substantial excess of assessment over cost would be general taxation of the particular district in disregard of all mandates of equality. A law which should direct or inevitably compel such a result would doubtless be held void anywhere in the United States as an act of confiscation." *Gray on Limitations of the Taxing Powers,* section 1883. "While an assessment is levied upon the theory of benefits to the property conferred by the public improvements in which the assessment is levied, it is also, in theory, levied for the cost of such improvement. Accordingly, if the benefits exceed the cost, the assessment can only be for the actual cost of the work, together with the proper items incident thereto." 1 *Page & Jones on Taxation by Assessment,* section 466. "The assessment can only be levied for the actual cost of the improvement, and the local authorities can not include in the assessment the expense of any other work than such as is necessary to complete the particular improvement in a reasonable and fair mode." 2 *Roads & Streets* (Elliott) (3 ed.), section 715.

Although the usual constitutional mandate enjoining equality and uniformity in taxation does not generally apply to special assessments for local improvements, if a statute permitted a municipality to make such assessments in excess of the cost of the improvements, and the expenses incident

thereto, it would unquestionably be contrary to Article 15 of
our Bill of Rights, for such assessments would require those
so assessed to contribute to the support of the government,
to the extent of the excess, as other taxpayers are not re-
quired to do.

If we seek for expressions in opinions in this State, re-
flecting upon the subject, they are not wholly wanting, al-
though the precise question has never been in this Court
before.    In *Alexander* v. *Baltimore, supra,* CHIEF JUDGE
ARCHER, who sat in the lower Court and was affirmed, said,
in considering the validity of laws assessing benefits for im-
provements: "It is not perceived that the assessment of bene-
fits *equivalent to* damages, if, in fact, the benefits are equal
to the damages, on particular districts benefited, can be ob-
jectionable." In *Baltimore* v. *Greenmount Cemetery,* 7 Md.
517, where it was contended that the Cemetery Company was
exempt from a paving tax, under its charter, which provided
that the cemetery, "so long as used as such, shall not be liable
to any tax or public imposition whatever," CHIEF JUDGE
LeGRAND said: "We think the Legislature intended nothing
more than to exempt the property of the proprietors from all
taxes or impositions levied or imposed for the *purpose of
revenue,* and not to relieve it from such charges as are
inseparably incident to its location in regard to other prop-
erty." Under the city's contention, although the Cemetery
Company would be exempt from taxes imposed for the pur-
pose of revenue, yet it could indirectly be required to pay
for that purpose, if some of the benefits assessed for public
improvements were to go into the city treasury. In *Brooks*
v. *Baltimore,* 48 Md. 265, property outside of the city was
held liable for benefits on account of an improvement within
the city limits.

The Court said: "We have failed to find any constitutional
prohibition upon the exercise of this power by the Legislature.
Was it a tax, which had been imposed, to be contributed for
the support of the municipal government, it would be other-

wise." Yet is it to be said, that the Legislature did, or could authorize the city to indirectly impose upon the property of Mr. Brooks, which was located outside of the city, a tax for the support of the municipal government, under the name of benefits, when it could not have laid a tax on that property for such purposes?

Our conclusion is that the Legislature has not authorized, and could not authorize the city to assess benefits for such an improvement in excess of the aggregate of damages and expenses. Of course we refer to a substantial excess, and not a matter of merely a few dollars, as it might in many cases be impracticable or impossible to avoid such a difference. It only remains to pass on the rulings of the Court, and then determine how relief can be obtained, if in point of fact the benefits will exceed the damages and expenses in making this improvement. We have no means of determining that question of fact under present conditions, and therefore will express no opinion on it, but notwithstanding what we have said, we must affirm the action of the lower Court. It is admitted in the record that there are now pending in that Court about 170 appeals from the return of the Commissioners, some of which relate to awards of damages. It is therefore impossible to now know what the result will be when the appeals are all determined. It will have to be decided what benefits each one should be assessed with, regardless of what others are, or what the damages and expenses amount to. The question to be determined in a benefit case is what benefits have accrued to the particular property. The amount of damages may also be changed at the trial of all or some of the damage appeals. The prayer of the petitioner referred to above was therefore properly refused, and the two prayers offered by the city were properly granted. But nevertheless, if after all of the cases are determined, and it is then known what the aggregate of damages and expenses is, and what the aggregate of all assessments of benefits is, the latter exceeds the former, then the proper proportion of the excess should be deducted from the benefits charged each

one. For example, to take a simple illustration, if the total damages and expenses are $225,000.00 and the total benefits assessed are $300,000.00, there would be an excess of $75,-000.00, which would be one-fourth of the total benefits. In such case the Court should deduct one-fourth of each assessment of benefits—that is to say, a property assessed with $3,000.00, would be entitled to a reduction of $750.00, and so on.

Inasmuch as the city has in our judgment no power to assess benefits which materially amount to more than the aggregate of damages and expenses, it is the duty of the Commissioners to deduct the excess, if they find such, by allowing each assessment its proportion of the amount deducted. Their return should, of course, show that such deductions were made. We think that section 177 would authorize that, as they "shall make all such corrections and alterations in the valuations, assessments and estimates, and all other matters contained in the said statements and explanatory map or maps aforesaid, as in their judgment shall appear to them, or a majority of them, to be just and proper * * *; and after closing such review the Commissioners shall make all such corrections in their statement and explanatory map or maps as they shall deem proper, and cause such statement as corrected to be recorded in their book of proceedings," etc. They then deposit the book of proceedings and maps in the office of the City Register, and after certain notices provided for, section 179 authorizes appeals by the city or any person or corporation dissatisfied with the assessment of damages or benefits. On appeal the Court directs the clerk to issue a *subpoena duces tecum* to the City Register, requiring him to produce and deliver to the Court the record of the proceedings of the Commissioners in the case, and all maps, plats, documents and papers connected with such record, "and the said City Court shall have full power to hear and fully examine the subject and decide on the said appeal * * * and may require the said Commissioners, their clerk, surveyor, or other agents and servants, or any of them,

and all such other persons as the Court shall deem necessary, to attend and examine them on oath or affirmation, and may permit and require all such explanations, amendments and additions to be made to and of the said record of the proceedings as the said Court shall deem requisite."

As it is impossible to tell in such a case as this whether the benefits will exceed the damages and expenses, and if so to what extent, until all of the cases are finally settled, we can find no better way of disposing of the question. Section 179 certainly confers upon the Court large powers, and the object is to do justice to all. In addition to what we have already quoted, that section has the following important provision in it: "and the said Court shall not reject or set aside the record of the proceedings of the said Commissioners for any defect or omission in either form or substance, but shall amend or supply all such defects and omissions, and increase or reduce the amount of damages and benefits assessed, and alter, modify and correct the said return of proceedings in all or any of its parts, as the said Court shall deem just and proper." As, then, in a case where the benefits materially exceed the damages and expenses, the Commissioners should make the reduction, upon their failure to do so, the Court can do so on appeals to it.

We have not considered the question as to what can be and what cannot be allowed as damages and expenses, because it is not before us. This is a very peculiar case. Undoubtedly the city has spent very large sums of money in improving Jones' Falls, but how much and what can properly be charged to the Fallsway we have no means of determining from this record.

*Rulings affirmed, with costs.*