## BALTIMORE CITY COURT.

Filed April 4, 1919.

MARYLAND TRUST COMPANY
VS.
MAYOR AND CITY COUNCIL OF
BALTIMORE.

*Sylvan Hayes Lauchheimer, Joseph S. Goldsmith* and *Charles McHenry Howard* for plaintiff.

*S. S. Field* for defendant.

AMBLER, J.—

The Fallsway was opened under Ordinance of February 9, 1912, and May 28, 1912, before Sections 177 and 179 of the City Charter were amended by Chapter 32 of the Acts of 1912, and the final return of the Commissioners for Opening Streets showing damages and expenses amounting in the aggregate to $434,943.89, and benefits assessed to the amount of $393,350.75 was deposited with the City Register on or about December 30, 1912. Over 2,000 pieces of property were involved in or affected by this proceeding, and 130 appeals from the award of the Commissioners were brought to this court. Among the others, the Maryland Trust Company, on January 27, 1913, entered its appeal from a benefit assessment of $94 against its property at the northwest corner of German and Calvert streets, but in this particular case no further action was taken until May 15, 1914, when the appellant filed a petition stating that in the case of Arthur George Brown, trustee, vs. Mayor and City Council of Baltimore, another Fallsway appeal, this court had passed an order directing that three items, together amounting to $299,108.75, which had been included by the Commissioners among the expenses of the proceeding, should be stricken out of the Commissioner's return and their calculations corrected in such manner as might be necessary in consequence of this change. The petition then prayed the court to decrease proportionately all assessments for benefits made by the Commissioners to such extent that the total amount of benefit assessments should not exceed the aggregate amount of the damages and expenses after eliminating the $299,108.75. On May 28, 1914, the Mayor and City Council answered, in substance:

(1) That the return of the Commissioners did not show the entire cost of opening the Fallsway, because only nominal damages were allowed for the bed of Jones Falls, and by adding the value of the bed of the Falls the real cost of the improvement would greatly exceed the aggregate amount of all the benefits assessed; and

(2) That a large number of appeals were then pending and until all were disposed of it was impossible to determine the entire amount of damages and expenses.

The case came to hearing on May 28, 1914, and Judge Duffy, who was for the time sitting in this court, passed an order, which was later reduced to writing, as follows:

"Ordered by the Baltimore City Court this 2nd day of June, 1914, nunc pro tunc as of the 28th day of May, 1914, that the three items: Expense of Commission on City Plan, $6,108.75; estimated cost of viaduct, $225,000; estimated cost of grading, $68,000, which appear in the list of expenses in the Condemnation Book for Opening the Fallsway, be and they are hereby stricken from said book, and that the total of damages and expenses which is shown by said condemnation book to be $434,943.89 be and the same is hereby changed to $135,835.14."

In the course of the hearing on May 29, 1914, the City Solicitor presented a written motion asking the court to "correct the book of proceedings of the Commissioners for Opening Streets by inserting therein among the damages the following item, to wit: "Value of the bed of the Fallsway, the sum of $356,724, as offered to be proved in this case by the witness Bernard." That motion was refused, and at the conclusion of the evidence the court granted instructions ruling as matter of law: (1) "That, it being admitted by agreement of counsel that the petitioner's property is actually benefited by the opening of the Fallsway to the amount of $94, the inquisition of the court sitting as a jury should be for the sum of $94 benefits in this case," and (2) "that it is impossible now to ascertain the total damages and expenses of opening the Fallsway, and, therefore, the court cannot cut down the benefits upon the petitioner, upon the contention that the aggregate benefits exceed the total damages and expenses." Thereupon an inquisition was duly signed fixing the benefits at $94, the amount assessed by the Commissioners, and the Maryland Trust Company took an appeal. On January 14, 1915, the Court of Appeals affirmed Judge Duffy's ruling, but in the course of its opinion (125 Md. 40, 52-3) uses the following language:

"But, nevertheless, if, after all the cases are determined and it is known

what the aggregate of damages and expenses is and what the aggregate of all assessments of benefits is, the latter exceeds the former, then the proper proportion of the excess should be deducted from the benefits charged each one. For example, to take a simple illustration, if the total damages and expenses are $225,000 and the total benefits assessed are $300,000, there would be an excess of $75,000, which would be one-fourth of each assessment of benefits; that is to say, a property assessed with $3,000 would be entitled to a reduction of $750, and so on."

The last of the Fallsway appeals was disposed of by this court on February 5, 1919, and immediately the Maryland Trust Company filed a supplemental petition setting forth that "all appeals from the action of the Commissioners for Opening Streets in the matter of the condemnation and opening of the Fallsway have been finally determined and the aggregate amount of the benefit assessments as now shown by the condemnation book is much in excess of the damages awarded and expense incurred as now shown by the said condemnation book," and praying "that an order may be passed directing that the aggregate amount of the benefit assessments, as shown by said condemnation book, be ascertained, and also the aggregate amount of the damages and expenses, as now shown by said condemnation book, and that thereupon proportionate amounts be deducted from all the benefit assessments, so that the excess of the said benefit assessments over the said total amount of damages and expenses shall be eliminated.

The city moved that the petition be dismissed for lack of jurisdiction and for the reason, among others, that under the decision of the Court of Appeals in 125 Md. 40, any amendment of the return should now be made by the Commissioners for Opening Streets. Upon the overruling of this motion, an answer was filed setting up substantially, but with greater elaboration and with more or less persuasive argument, the same objections presented by the motion; and upon the sustaining of a demurrer to this answer, there was an amended answer, divided into four paragraphs or sections, in substance as follows:

(1) That the aggregate amount of the benefit assessments levied for the opening of the Fallsway is not in excess of the aggregate amount of the expenses to the Mayor and City Council of Baltimore for the opening of the Fallsway.

(2) That the value of the land which was purchased by the city for the purpose of opening the Fallsway and the value of the land which was owned by the city and which was used for the purpose of forming part of the bed of the Fallsway at the time when said land was taken for that purpose aggregated a larger sum than the entire amount of benefits assessed for the opening of the Fallsway.

(3) That the land which was taken for and is now used as the bed of the Fallsway and which had been acquired by the city prior to the assessment of damages made by the Commissioners in the proceedings for the opening of the Fallsway and was owned by the city when the said award of damages and assessment of benefits were made by the Commissioners, cost the city more than the entire total of benefits assessed for the opening of the Fallsway—and then, after a full recital of the successive steps by which the city had acquired and improved this land, the third paragraph of the answer concludes as follows: "That at the time the land forming the bed of the Fallsway, from south of Baltimore street to Guilford avenue, was taken for the purpose of forming the bed of the Fallsway, it was either actually or in legal contemplation land brought substantially to the elevation of the surrounding ground by the construction of the tubes aforesaid and was land available for building or other commercial purposes, if it had not been used for the Fallsway, and the amount that the land in the condition it then was had cost the city exceeded the total amount of the assessments for benefits for the opening of the Fallsway manifold."

(4) That the land which was owned by the city and was taken in these proceedings and devoted to the purpose of forming the bed of the Fallsway exceeded in value the total amount of the benefits assessed for the opening of the Fallsway, and, if it had not been taken for that purpose, was available

for building purposes and could have been sold by the city in its then condition for a larger sum than the entire aggregate of the assessment of benefits for the opening of the Fallsway.

To this answer the Maryland Trust Company filed a general demurrer. Although the several paragraphs differ somewhat in phraseology, each, regardless alike of the Commissioners' return, of the court's rulings and of the petitioner's allegations, claims, in substance, only that the damages and expenses incurred in opening the Fallsway did, as a matter of fact, greatly exceed the total amount of benefits assessed, so that the answer does not squarely meet the averments of the petition.

It does not seem to me that I have the right, any more than I have the desire, to correct or review either my predecessor's order eliminating $299,-108.75 from the list of expenses or his refusal to amend the Commissioners' return by including among the damages $356,724 as the value of the bed of the Fallsway. The city contends that the order striking out the $299,-108.75 was beyond the jurisdiction of the court, since the petitioner's appeal was limited to the benefits assessed against its property; and I take it to be well settled that this court has no original jurisdiction in the matter of opening streets, and that for most purposes each appeal is a separate and distinct case, and brings up only the questions directly involved in its particular case. (Mayor & City Council vs. Smith & Schwarz, 80 Md. 458.) It does seem to me, however, that on appeal the petitioner was entitled to a hearing on every question affecting the amount of the assessment to be levied upon its property, and that the amount of such assessment was directly and materially affected by the amount of expenses allowed in the condemnation proceeding (Baltimore vs. Coates, 85 Md. 531, 535; Maryland Trust Co. vs. M. & C. C. of Baltimore, 125 Md. 40).. On the other hand, while Section 179 of the City Charter unquestionably gives the court broad power on appeal to "alter, modify and correct the said return of the proceedings" of the Commissioners for Opening Streets, I find no provision authorizing the court to increase or diminish any assessments

in the absence of a prompt appeal (Timanus vs. M. & C. C. of Baltimore, 128 Md. 105), and, so far as I am advised, neither the city nor any other party to the condemnation proceeding directly appealed from any allowance, general or special, of damages or expenses awarded to the city. As the whole number of appeals was only 130, while the number of pieces of property affected was over 2,000, the city and the property owners have accepted the Commissioners' findings in more than 90 per cent. of the awards. It could hardly be proper at this late day to reopen and correct the return as to cases thus finally closed more than six years ago. Certainly, in a great many instances, probably in all, the benefits assessed and the damages awarded have been actually paid and satisfied; and I surely have no authority to require the city to refund any money received by it in excess of what I might now ascertain to be the correct assessment. The records of this court afford no means of determining which of the inquisitions in the appeal cases have been settled and satisfied, but in these cases also money actually paid to the city is equally beyond the reach of the court.

I am as desirous as counsel on either or both sides can be to get this matter into a shape that will enable the Court of Appeals to determine all questions, which are rendered more complicated and difficult by the unfortunate fact that, notwithstanding the explicit provisions of the City Charter (Sections 177 and 320) for the prompt hearing of street appeals, the litigation over the Fallsway has been protracted over so many years. I am prepared to sustain the demurrer, and, after adding the reasonable costs of the various appeals (Charter, Sec. 179), to ascertain the proportionate abatements to be made from the assessments against the Maryland Trust Company and any other property owners, parties to proceedings on appeal in this court, who have not already actually "settled" with the city; but that will involve some further delay in the investigation of the appeal docket and of the records at the City Hall unless counsel can agree upon the form of a final order or judgment which can be made the subject of appeal to the Court of Appeals.