# THE MAYOR AND CITY COUNCIL OF BALTIMORE

## ET AL.

*vs.*

# THE MARYLAND TRUST COMPANY.

*Condemnation Proceedings—Opening Streets in Baltimore City—Assessments Exceeding Damages and Expenses.*

The City of Baltimore, in condemning land for the purpose of a street, has no power to assess benefits in excess of damages and expenses.                                                    p. 50

The duty of the Commissioners for Opening Streets to reduce the benefit assessments to the amount of damages awarded and expenses does not arise until all the appeals from the return of the Commissioners have been disposed of, and there is no right of appeal in such cases until the Commissioners have failed or refused to discharge that duty, and hence the rights of owners assessed for benefits to have their proportion of the excess of benefits deducted from their assessments cannot be made to depend on whether they appealed from the original return of the Commissioners, nor does the fact that a property owner has paid the assessment deprive him of the right to such deduction.
                                                    p. 52

Section 179 of the Baltimore City Charter, providing for appeals to the Baltimore City Court from the action of the Commissioners for Opening Streets, and authorizing that Court, upon appeals to it, to "amend or supply all such defects" in the record of the proceedings of the Commissioners, and to "increase or reduce the amount of damages and benefits assessed, and alter, modify and correct said return of proceedings in all or any of its parts, as the Court shall deem just and proper," confers on the City Court jurisdiction merely to review the action of the Commissioners, and consequently such court has no jurisdiction to pass an order requiring proportionate amounts to be deducted from all benefit assessments, so as to eliminate the excess of such assessments over the total amount of damages and expenses, it not appearing that the Commissioners had failed or refused to make such reduction after it had become possible for them to do so by reason of all the appeals from their findings as to this improvement having been disposed of.                    p. 51

The Baltimore City Court having no jurisdiction to grant the petition of a property owner for the reduction of its benefit

assessment to such a proportionate extent as to eliminate the total excess of such assessments over the amount of damages and expenses, evidence offered by the City to prove the value of lots, supposed to belong to the City, for which it was awarded merely nominal damages, and the cost of certain operations necessitated by the character of the location, as a prerequisite to the construction of the street, was inadmissible.                    p. 53

Where there is no appeal from the order of the Baltimore City Court striking out items of expenses allowed by the Commissioners for Opening Streets in the list of expenses returned by them, its action cannot be reviewed.                    p. 52

*Decided June 25th, 1919.*

Appeal from the City Court of Baltimore City (Ambler, J.).

The cause was argued, together with that next following, before Boyd, C. J., Briscoe, Burke, Thomas, Pattison, Urner, Stockbridge and Adkins, JJ.

*S. S. Field, City Solicitor,* for the Mayor and City Council of Baltimore.

*Sylvan Hayes Lauchheimer* and *Charles McHenry Howard,* with whom was *Joseph S. Goldsmith* on the brief, for the Maryland Trust Company.

Thomas, J., delivered the opinion of the Court.

On the 27th of January, 1913, the Maryland Trust Company appealed from the action of the Commissioners for Opening Streets in the matter of condemning and opening the Fallsway, and alleged in its petition that the benefits assessed against it in reference to its lot, designated as lot No. 1162, in the return of said Commissioners, was excessive, and that the Commissioners for Opening Streets had no authority to make any assessments in the matter (1) because under the Act of 1910, Chapter 110, (p. 639), all expenses in connection with the acquiring of land for said highway were to be paid out of the loan authorized by that Act. (2) Because the Commissioners for Opening Streets was not the

proper city agency for the condemnation of land, etc., for
said highway, the same having been committed to the Com-
mission on City Plan. (3) Because Ordinance No. 70, ap-
proved February 9th, 1912, specifically referred to Chapter
110 of the Act of 1910, which provides for the opening, etc.,
of said highway under the direction of the Commission on
City Plan. (4) Because the damages and benefits awarded
by the Commissioners for Opening Streets were illegally
awarded, in that the property of the city within the assessed
area, from which it derives revenue, was not assessed for
benefits. The petition prayed the Court to review the deci-
sion and awards of the Commissioners for Opening Streets;
to determine whether the Commissioners for Opening Streets
had any authority in the matter, and whether all the expenses
incident to the opening of said Fallsway were not to be paid
out of the loan authorized by the Act of 1910. Thereafter,
on the 15th of May,1914, the Trust Company filed in said
case a petition alleging that when the Commissioners for
Opening Streets made their final return in the matter, their
statement of damages awarded, expenses incurred and bene-
fits assessed erroneously showed the aggregate amount of dam-
ages awarded and expenses incurred in said condemnation
proceedings to be the sum of $434,943.89 and the total sum
of benefits assessed to be $393,358.75, and that upon inspec-
tion it was discovered that the Commissioners had unlawfully
and improperly included among the expenses of said proceed-
ings the following items: "Expenses of Commission on City
Plan, $6,108.75; estimated cost of Viaduct, $225,000.00;
estimated cost of grading, $68,000.00"; that in the case of
*Brown, trustee,* v. *Mayor and City Council of Baltimore,* the
Baltimore City Court had ordered those items to be stricken
out of said return, and the calculations of the Commissioners
altered accordingly; that when said items shall have been
stricken out in accordance with said order the aggregate
amount of damages and expenses will be reduced to the sum
of $135,835.14; that the said amount of benefits assessed
being largely in excess of the amount of damages and ex-

penses, the benefit assessments, to the extent of such excess, are illegal and void. The petition prayed the Court to decrease proportionately all assessments of benefits so that the total amount of benefit assessments would not exceed the aggregate amount of damages and expenses. In its answer to the petition of the Trust Company of May 15th, 1914, the city alleged that the report of the Commissioners for Opening Streets did not show the entire cost of opening the Fallsway because only nominal damages were allowed by the Commissioners for the bed of Jones' Falls, and that by adding the value of the bed of the Falls the real cost of the improvements would exceed the aggregate amount of benefits assessed; that a large number of appeals were then pending from damages as well as benefits, and that until they were disposed of no one could say what the entire damages and expenses will be; that the Commissioners allowed only nominal damages for the bed of the Falls on the theory that the bed belonged to the city, and that if the contrary should be determined in any of the appeals from damages, the damages and expenses would exceed the benefits assessed by the Commissioners, and that the total amount of damages and benefits was immaterial in this case because the sole question in the case is the amount that the appellant is actually benefited by the opening of the Fallsway.

For the purpose of having the Court below determine, without delay, "certain questions of law affecting the condemnation proceedings," the parties on May 28th, 1914, filed an agreement that the property of the Trust Company was benefited to the extent of the assessment of $94.00, and that no testimony as to the amount of benefits would be produced. The case was submitted to the Court, without a jury, and the Court signed an inquisition assessing the benefits against the Trust Company at $94.00. The Court also signed an order that the three items of expenses mentioned in the Trust Company's petition of May 15th, 1914, be stricken from the condemnation book for the opening of the Fallsway, and that the total damages and expenses shown by said book to be $434,-

943.14 be changed to $135,835.14.   At the hearing the Trust
Company offered in evidence an agreement of counsel stat-
ing, among other things, that it appeared from the condemna-
tion book returned by the Commissioners for Opening Streets
that the damages awarded by the Commissioners amounted to
$128,616.98, and that in the statement of expenses contained
in said book, aggregating $306,326.91, were the three items
referred to in the petition of the Trust Company of May 15th,
1914.   The agreement further stated that the aggregate
amount of benefits assessed was $393,358.75.   The Trust
Company also offered in evidence the proceedings in the
appeal of Brown, trustee, to the Baltimore City Court from
an assessment of benefits for the opening of the Fallsway, in
which the Court passed the order referred to in the Trust
Company's petition of May 15th, 1914, directing the Com-
missioners to strike from the list of expenses the three items
mentioned in said petition and to make the corresponding
change in the total.   The city offered to prove that the value
of 217 lots in the bed of the Fallsway (for which the Com-
missioners had allowed damages of $1.00 per lot), assuming
the bed to be dry and at its original grade, would be $308,-
162.00, and that if filled up and brought to the grade of
adjoining lots, the value of said lots would be $356,724.00.
The Trust Company objected to the evidence, and the Court
sustained the objection, whereupon the city moved the Court
to correct the book of proceedings of the Commissioners by
inserting therein "among the damages," "Value of the bed of
Fallsway" $356,724.00, but the Court overruled the motion.
The city proved that the Sewerage Commission had brought
the bed of the Falls to grade by constructing concrete tubes
which furnished the foundation upon which the Fallsway
pavement was laid, and then offered to prove that the cost of
the tubes, "which were constructed for the double purpose of
carrying the water of Jones' Falls to the harbor and furnish-
ing a base for a street over the Falls," was $1,059,771.55, but
the Court, upon objection by the Trust Company, refused to
admit the evidence.   The city proved by Mr. Grannan, one

of the Commissioners, that the Commissioners made nominal awards of $1.00 for each lot in the bed of Fallsway believing that the Fallsway belonged to the city; that the Falls was divided into a large number of lots on the damage plat, and that he did not make any estimate of the actual value of the Fallsway.

It was admitted by the Trust Company that there were pending about one hundred and seventy appeals from the return of the Commissioners for Opening Streets, some of which related to awards of damages. The evidence being closed, the Court below refused to grant the prayer of the Trust Company in its petition of May 15th, 1914, and its action was made the subject of the first exception of the Trust Company. The second exception was to the rejection of the Trust Company's prayer, and to the granting of the following prayers of the city:

"The Court rules as a matter of law that it being admitted by agreement of counsel that the petitioner's property is actually benefited by the opening of the Fallsway to the amount of $94.00, the inquisition of the Court, sitting as a jury, should be for the sum of $94.00 benefits in this case."

"The Court rules as a matter of law that it is impossible now to ascertain the total damages and expenses of opening the Fallsway, and therefore the Court cannot cut down the benefits upon the petitioner, upon the contention that the aggregate benefits exceed the total damages and expenses."

On the 18th of June, 1915, the Trust Company entered an appeal from the "rulings, inquisition and judgment in" the case, and in disposing of that appeal, CHIEF JUDGE BOYD, speaking for this Court (in 125 Md. 42), after stating that the first exception was to the refusal of the lower Court to grant the prayer of the Trust Company's petition of May 14th, 1915, and after setting out the two prayers of the city referred to in the second exception, said: "The city's position is that, it being admitted the appellant's property was benefited to the amount of the assessment, it makes no difference to the appellant whether the aggregate benefits assessed ex-

ceed or fall short of the cost of the improvement, because the appellant cannot be injured so long as its assessment does not exceed the actual benefit received by it.  It also denies that the aggregate of the benefits assessed in this case exceeds the real cost of the improvement, and contends that no means are provided by law for doing what the petitioner asked the Court below to do."  After discussing the question whether under the City Charter the benefits can exceed the damages and expenses, and after stating the conclusion of this Court that the Legislature had not authorized, and could not authorize, the city to assess benefits for such an improvement in excess of the aggregate damages and expenses, he said further: "It only remains to pass on the rulings of the Court, and then determine how relief can be obtained, if in point of fact the benefits will exceed the damages and expenses in making this improvement.  We have no means of determining that question of fact under present conditions, and therefore will express no opinion on it, but notwithstanding what we have said, we must affirm the action of the lower Court.  It is admitted in the record that there are now pending in that Court about 170 appeals from the return of the Commissioners, some of which relate to awards of damages.  It is therefore impossible to now know what the result will be when the appeals are all determined.  It will have to be determined what benefits each one should be assessed with, regardless of what others are, and what the damages and expenses amount to.  The question to be determined in a benefit case is what benefits have accrued to the particular property.  The amount of damages may also be changed at the trial of all or some of the damage appeals.  The prayer of the petitioner referred to above was therefore properly refused, and the two prayers offered by the City were properly granted.  But nevertheless, if after all the cases are determined, and it is then known what the aggregate damages and expenses is, and what the aggregate of all the assessments of benefits is, the latter exceeds the former, then the proper proportion of the excess should be deducted from the benefits charged each one.

* * * In as much as the city has in our judgment no power
to assess benefits which materially amount to more that the
aggregate of damages and expenses, it is the duty of the Com-
missioners to deduct the excess, if they find such, by allowing
each assessment its proportion of the amount deducted. The
return should, of course, show that such deductions were
made. We think section 177 would authorize that, as they
'shall make all such corrections and alterations in the valu-
ations, assessments and estimates, and all other matters con-
tained in the said statements and explanatory map or maps
aforesaid, as in their judgment shall appear to them, or a
majority of them, to be just and proper * * *; and after clos-
ing such review the Commissioners shall make all such correc-
tions in their statement and explanatory map or maps as they
shall deem proper, and cause such statement as corrected to
be recorded in their book of proceedings,' etc. They then
deposit the book of proceedings and maps in the office of the
City Register, and after certain notices provided for, section
179 authorizes appeals by the city or any person or corpora-
tion dissatisfied with the assessment of damages or benefits.
On appeal the Court directs the clerk to issue a *subpoena
duces tecum* to the City Register, requiring him to produce
and deliver to the Court the record of the proceedings of the
Commissioners in the case, and all maps, plats, documents
and papers connected with such record, 'and the City Court
shall have full power to hear and fully examine the subject
and decide on the said appeal * * * and may require the said
Commissioners, their clerk, surveyor or other agents and
servants, or any of them, and all such other persons as the
Court shall deem necessary, to attend and examine them on
oath or affirmation, and may permit or require all such ex-
planations, amendments and additions to be made to and of
the said record of the proceedings as the said Court shall deem
requisite.'

"As it is impossible to tell in such a case as this whether
the benefits will exceed the damages and expenses, and if so,
to what extent, until all the cases are finally settled, we can

find no better way of disposing of the question. Section 179 certainly confers upon the Court large powers, and the object is to do justice to all. In addition to what we have already quoted, that section has the following important provision in it: 'and the said Court shall not reject or set aside the record of the proceedings of the said Commissioners for any defect or omission in either form or substance, but shall amend or supply all such defects and omissions, and increase or reduce the amount of damages and benefits assessed, and alter, modify and correct the said return of proceedings in all or any of its parts, as the said Court shall deem just and proper.' As, then, in a case where the benefits materially exceed the damages and expenses, the Commissioners should make the reduction, upon their failure to do so, the Court can do so on appeals to it." 125 Md. 40.

After the decision in 125 Md. 40, the Maryland Trust Company, on the 6th of February, 1919, filed in the case a petition alleging that it was advised that all appeals from the determination of the Commissioners for Opening Streets in connection with the opening of the Fallsway had been finally disposed of, and that the aggregate amount of benefit assessments, as shown by the condemnation book, was much in excess of the aggregate amount of the damages awarded and expenses incurred as shown by said book, and praying the Court to pass an order requiring "proportionate amounts" to be deducted from all benefit assessments so as to eliminate the excess of said benefit assessments over the total amount of damages and expenses. The city filed a motion to dismiss the petition for the following reasons: (1) Because this case originated in an appeal filed January 27th, 1913, from an assessment of benefits of $94.00, and in said petition it was alleged that the Commissioners for Opening Streets had no right to assess benefits upon the lot of the petitioner for the reasons therein stated; that the principal reasons specified were decided adversely to the contentions of the petitioner by the Court of Appeals in other cases, and that subsequently, on May 15th, 1915, the petitioner filed in said case another

petition alleging that the damages and expenses set out in the
return of the Commissioners included certain items improp-
erly, and that with said items stricken out the total damages
and expenses would appear to be only $135,835.14, and that
the aggregate amount of benefits was $393,358.75, and pray-
ing the Court to decrease proportionately the benefit assess-
ments so as not exceed the total damages and expenses; that
the matter arising on said petition was tried before his Honor,
JUDGE DUFFY, who found an inquisition assessing benefits
upon said lot to the amount of $94.00; that the Trust Com-
pany, on May 18th, 1915, took an appeal to the Court of
Appeals from the "ruling, inquisition and judgment in the
case"; that on June 22nd, 1914, the Court below passed an
order refusing the petition of the Trust Company of May
15th, 1914, to scale down the benefit assessments, and that
such ruling was made the subject of one of the petitioner's
bills of exception; that the lower Court having taken final
action upon the petition, and an appeal having been taken
from its rulings, the jurisdiction of the lower Court in the
case was at an end unless the case was remanded by the Court
of Appeals; that the Court of Appeals did not remand the
case, and that the action of the Court of Appeals was the end
of the case, and the Court below had no jurisdiction to enter-
tain the petition of the Trust Company.   (2) Because under
the decision of the Court of Appeals it is the duty of the
Commissioners for Opening Streets, after all the appeals have
been disposed of, "if they find that the aggregate benefits ex-
ceed the cost of its improvement, to amend their return and
scale down proportionately the benefits so that the total of
benefits shall not exceed the total of cost of the improve-
ment," but that the Commissioners could not act in the per-
formance of that duty until all the appeals were disposed of.
(3) That, as appears from the records of the Baltimore City
Court, all of the appeals were not disposed of until February
5th, 1919, and that therefore the Commissioners had not had
an opportunity to perform the duty indicated by the Court
of Appeals.   (4) That the Court of Appeals in its decision
distinctly left open the question as to what elements of cost

and expense of the improvement should enter into the total damages and expenses, and that it will be the duty of the Commissioners in the first instance to pass upon that question. (5) That the Commissioners are ready and willing to amend their return in the light of the decision of the Court of Appeals, and in accordance with the principles therein laid down. (6) That the Baltimore City Court had no original jurisdiction to either increase or diminish any assessment of benefits, and no original jurisdiction to scale down the benefits as directed by the Court of Appeals in the event the benefits exceed the cost of the improvements, and that only upon the failure of the Commissioners to make such amendment, and upon an appeal from such failure or refusal, would the Baltimore City Court have jurisdiction to order or make such amendment, and that therefore the Court had no jurisdiction to entertain the petition of February 6th, 1919. The Court below overruled the motion of the city, and thereupon the city filed an answer to the petition, in which, in addition to the defenses relied on in its motion, it alleged that the Trust Company had no standing to ask that its assessment be scaled down with the view of obtaining admitted benefits to the amount of $94.00 and paying therefore only $37.00; that if the Court should be of the opinion that it was proper for the Court upon said petition to review the entire proceedings of the Commissioners in the light of the decisions of the Court of Appeals, the Court should in fairness to the Commissioners refer the matter back to them to ascertain the real cost of the improvement and the aggregate benefits charged against the property benefited thereby; that in the original estimate of the Commissioners they allowed $1.00 damages for each of 217 lots forming the bed of the Falls, and that it will appear from the record of proceedings in the case of the *City* v. *Carroll,* 128 Md. 68, that for one of those lots Charles Carroll and others succeeded in recovering $4,133.70 "for their bare title under the stream," and that it was therefore demonstrated that those 217 lots were worth a large sum of money; that the value of those lots, without regard to making the land available for use as a street, was more than $350,000.00,

and if that value was taken into consideration, the bare value of the land would exceed the aggregate of benefits assessed; that in the ordinary case benefits cannot, under the City Charter, be charged for grading a street, but that in the case of the Fallsway it was necessary, in order to make it possible to use it as a street, to cover the stream by three concrete tubes, which cost more than $1,000,000.00 and for which no assessment could have been levied on the property benefited "either under the head of opening or grading or paving"; that at the time the Trust Company filed its petition its property, which the company admitted was benefited to the extent of $94.00, was enjoying the benefit of an improvement which cost a sum in excess of $1,600,000.00, that the award of $1.00 for each of the 217 lots was made in pursuance of a practice in the office of the Commissioners, where land belonging to the city is taken for a part of the bed of a street, to award merely nominal damages; that the principle that the aggregate benefits ought not to exceed the aggregate cost of an improvement must, in fairness, be based upon the *real cost* of the improvement and "not upon a mistaken statement." The Trust Company demurred to the city's answer, and the Court below sustained the demurrer, with leave to the city to amend. The city filed an amended answer setting up, in substance, the same defenses, and the Court below sustained a demurrer to it on April 4th, 1914. On the same day the Safe Deposit and Trust Company of Baltimore, trustee, filed a petition in the case alleging that it held in trust certain lots of ground which were assessed for benefits by the Commissioners in the opening of the Fallsway, but that no appeals had been taken by it from the original assessments of benefits, and praying that it be permitted to join in the prayer of the petition of the Maryland Trust Company, and the Court below passed an order making it a party for the purpose of uniting in the prayer of the Maryland Trust Company. Thereupon counsel for the petitioners and the respondents filed in the case an agreement stating: "It is agreed for the purpose of a decree in this case," that the total damages and expenses as shown

by the condemnation book, when the book was first produced in the Court below at the trials of the first appeals, amounted to $434,493.89; that the appeals from damages awarded resulted in an increase of $7,703.12, and that as a result of the appeals benefit assessments were increased to the amount of $69,289.75, showing a total of damages and expenses, if the order of JUDGE DUFFY passed in this case be disregarded, of $442,547.01, and if the amounts mentioned in his order be deducted, a total of $143,438.26, and that the total amount of benefit assessments as shown by the book was $324,069.00. The agreement set out the order of JUDGE DUFFY striking out the three items of expenses heretofore referred to, but stated that the agreement was not to be construed as an agreement on the part of the defendant that JUDGE DUFFY had jurisdiction to pass that order. It further stated that neither of said items "has as yet been actually stricken from the book" as directed by the order; that the last of the appeals from the Commissioners were disposed of on the 5th of February, 1919; that since the first appeal the Commissioners had not had possession of the condemnation book, or any opportunity to make any changes therein, and that the final revision made by them prior to any appeals was completed December 30th, 1912; that a large number of appeals were disposed of by trial, and a large number by agreement, and that the condemnation book in evidence before the Court showed the disposition of all appeals by certified copies of the docket entries pasted therein according to the usual practice in such cases. The city produced Mr. Gilbert, and offered to prove that he had been a real estate agent for twenty years and was familiar with the value of property on the Fallsway, and its first exception is to the refusal of the Court to admit the evidence. Its second exception is to the refusal of the Court to permit it to prove by said witness that the value of the 217 lots under the bed of the Fallsway, on December 30th, 1912, was $371,455.00, and its third exception is to the rejection of evidence to prove that the value of the lots, for which $1.00 was awarded to the city, was, on that date, $169,-

189.00.   Its fourth exception is to the rejection of evidence
to show that the value of the lots after the tubes were made
was $371,000.00, and its fifth exception was to the rejection
of evidence that the lots for which the Commissioners awarded
$1.00 were over the tubes which had been completed Decem-
ber 30th, 1912.   The sixth exception of the city was to the
refusal of the Court to allow it to prove by the witness Butler
the facts to which Mr. Gilbert testified.   Its seventh excep-
tion is to the refusal of the Court to admit evidence of the
total cost of the tubes in Jones' Falls, and its eighth excep-
tion is to the rejection of evidence of the manner in which the
tubes were constructed, and that the viaduct from Madison
street to Guilford avenue rests on the walls of the conduit.
The city's ninth exception is to the rejection of evidence to
show that the city paid $136,284.44 "for land for the flowage
of Jones' Falls between points covered by the Fallsway."

At the conclusion of the testimony, the Court below passed
the following order:

"Ordered by the Court this fifth day of April, 1919,
in conformity with the opinion filed herein on April
4th, 1919, that the benefit assessment of ninety-four
dollars ($94.00) against the Maryland Trust Company
in this case be and it is hereby reduced to forty-one
dollars and sixty cents ($41.60), being 44.26% there-
of; and

"It is further ordered that upon application made by
any other party assessed with benefits for the open-
ing of the Fallsway who duly took an appeal to this
Court from such assessment and who has not settled
with the City by actual payment of the benefits as-
sessed, an order shall be entered reducing the bene-
fits assessed to such party to a sum equal to 44.26 per
cent. of the amount of such benefits as fixed by the
inquisition in such case; but no abatement shall be
made of any part of any benefit assessment upon any
property from which no appeal was taken from the
action of the Commissioners for Opening Streets with-
in the time provided in Section 179 of the City Char-
ter."

The two appeals in the present record are by the city and by the Safe Deposit and Trust Company of Baltimore from the above order of the Court below.

We have set out at unusual length the record of the former appeal of the Maryland Trust Company and the record of the present appeals by the city and the Safe Deposit and Trust Company in order to clearly show what this Court decided in 125 Md. 40, and the disposition that will have to be made of the present appeals. In disposing of the contention of the city that as the appellant admitted that its property was benefited to the extent of the assessment, it made no difference whether the aggregate benefits exceeded or fell short of the aggregate of damages and expenses, this Court held in 125 Md. that the Legislature had not authorized, and could not authorize the city to assess benefits for such an improvement in excess of the aggregate of damages and expenses. But in as much as it appeared from the record in that case that there were then pending about 170 appeals from the return of the Commissioners, in which the awards of damages and the assessments of benefits might be changed, the Court held that it was impossible to determine under those conditions what the result would be, and that therefore the prayer of the appellant's petition asking the Court below to "decrease, proportionately, all assessments for benefits * * * to such extent that the total amount of benefit assessments shall not exceed the aggregate amount of damages and expenses, to wit, the sum of $135,835.14" was properly refused, and that the two prayers offered by the city were properly granted. This Court, however, also held that if, after all the appeals were determined, the aggregate of the benefits assessed exceeded the aggregate of damages and expenses, the proper proportion of the excess should be deducted by the Commissioners for Opening Streets from the benefits charged each one, and that if, in a case where the benefits materially exceed the damages and expenses, the Commissioners failed to make the reduction the Baltimore City Court can do so on appeals to it.

Section 179 of the City Charter provides for appeals by the city, or by any person or corporation from the action of the Commissioners for Opening Streets in laying out, opening, extending, widening, etc., any street, square, lane or alley to the Baltimore City Court, and authorizes that Court, upon appeals to it, to "amend or supply all such defects" in the record of the proceedings of the Commissioners, and to "increase or reduce the amount of damages and benefits assessed, and alter, modify and correct said return of proceedings, in all or any of its parts, as the said Court shall deem just and proper." The jurisdiction thus conferred upon the Baltimore City Court is the jurisdiction to *review the action* of the Commissioners and to make such changes and corrections in the record of their proceedings as the Court shall deem just and proper. The appeal of the Maryland Trust Company to the Baltimore City Court was not from the failure or refusal of the Commissioners for Opening Streets to reduce the amount of benefit assessments to the amount of damages awarded and expenses, for at the time of said appeal the amount of benefits did not exceed the amount of damages and expenses, and we said in 125 Md. that it could not be determined until all the appeals were disposed of whether the benefits assessed would exceed the aggregate amount of damages and expenses. The last appeal from the return of the Commissioners was not disposed of until the 5th of February, 1919, and it is not alleged in the petition of the Trust Company, filed on the 6th of February, 1919, that the Commissioners had failed or refused to reduce the amount of benefits assessed to the aggregate amount of damages and expenses, or that the Commissioners had failed or refused to deduct from its assessment the proper proportion of the excess of benefits over the amount of damages and expenses. It is therefore clear that the Court below had no jurisdiction to entertain the petition of the Maryland Trust Company filed on the 6th day of February, 1919, or to grant the relief therein prayed, and that the motion of the city to dismiss that petition should have been granted. For the same reason the Court had no power to

grant the relief prayed in the petition of the Safe Deposit and
Trust Company of Baltimore.

' The order of the Court below limited the right to a reduc-
tion of amount of benefits assessed to those who had appealed
from the return of the Commissioners within the time allowed
by the Charter, and who have not paid the assessments. But
the appeal referred to in the Charter is from the original
return of the Commissioners. The duty of the Commis-
sioners to make the deduction we are here referring to does
not arise until all such appeals have been disposed of, and
there is no right of appeal in such cases until the Commis-
sioners have failed or refused to discharge that duty, and
hence the right of owners of lots assessed for benefits to have
their proportion of the excess of benefits deducted from their
assessments cannot be made to depend upon whether they
appealed from the original return of the Commissioners. Nor
is there any reason why the Commissioners should not make
in their book the proper deduction from all assessments of
benefits, regardless of whether the party assessed has paid the
assessment, leaving it to the proper agent of the city to return
the overpayment, and to the person assessed such remedy, if
any, as he may have to recover it in the event it is not
returned.

So far as the record of the former appeal and the record
of the present appeals disclose there was no appeal from the
order of JUDGE DUFFY striking out the three items of ex-
penses allowed by the Commissioners in the list of expenses
returned by them, and, even if we had any doubt about the
propriety of said order, or the jurisdiction of the Court to
pass it, his action cannot be reviewed in this case. Nor does
it appear that there was any appeal by the city from the ac-
tion of the Commissioners in awarding $1.00 for each of the
lots owned by it in the bed of Jones' Falls or the Fallsway.
And in the view we have taken of the present appeals, it is not
necessary to determine whether in laying out, opening, etc., the
Fallsway, under section 175 of the City Charter, as enacted
by Chapter 123 of the Act of 1898, the Commissioners for

Opening Streets should have taken into consideration the cost to the city of the construction of the tubes in Jones' Falls.

As the Court below had no jurisdiction to grant the relief prayed in the petitions of the Maryland Trust Company and the Safe Deposit and Trust Company of Baltimore, the evidence offered by the city to prove the value of the lots for which it was awarded $1.00 damages, and the cost of constructing the tubes in Jones' Falls was clearly inadmissible. And that is so regardless of the question whether the city, not having appealed within the time allowed from the award of the Commissioners, can now dispute the correctness of said awards (*Timanus* v. *M. & C. C. of Baltimore,* 128 Md. 111), and without regard to the question whether evidence of the cost of constructing concrete tubes of the kind mentioned would be admissible, in any state of the proceedings, where a street, etc., is laid out, opened, etc., by the Commissioners for Opening Streets under section 175 of the City Charter of 1898. *Patterson* v. *M. & C. C. of Balimore,* 130 Md. 645.

It follows from what has been said that in No. 35 Appeals, the appeal of the Mayor and City Council of Baltimore, the order of the Court below, to the extent that it granted the relief prayed by the Maryland Trust Company, and attempts to limit the right to a reduction of the benefit assessments to those who have appealed and have not paid their assessments, must be reversed, and the petition of the Maryland Trust Company of February 6th, 1919, must be dismissed.

> *Order of Court below, to the extent of the relief granted the appellee, and it attempted to limit the right to a reduction of benefits to those who have appealed from the return of the Commissioners and have not paid their assessments, reversed, and petition of the appellee of February 6th, 1919, dismissed, with costs to the appellant.*