## WASHINGTON SUBURBAN SANITARY COMMISSION *v.* JACK G. SCRIVENER ET AL.

*Suburban Sanitary Commission—Notice of Proposed Improvements—Front Foot Assessments—Power to Increase.*

An admission by property owners that an assessment of benefits against their property was valid and operative involved an admission that all the preliminary acts had been done, including the making of surveys, plans, specifications, and estimates, and the giving of notice to persons interested, with an opportunity to present their objections.                    p. 70

The requirement of Acts 1918, ch. 122, secs. 4, 7, in regard to public improvements by the Washington Suburban Sanitary District, that prior notice of contemplated improvements should be given to persons interested, with an opportunity to them to be heard in regard thereto, is not affected by the fact that section 4 of that act, which prescribed the method and contents of the notice, and used the form "shall give notice," was amended by Acts 1924, ch. 189, sec. 4, so as to require in terms merely that, where the construction is upon the motion of the commission without petition or request from any party interested, "the commission may give such reasonable notice as may be advisable," section 7 of the original act, which provided that the commission shall proceed with any public improvement "after opportunity for a hearing has been given," remaining unchanged.

pp. 71, 72

The fact that Acts 1924, ch. 189, amending Acts 1918, ch. 122, omits the provision contained in the latter act and in the amending act of 1920, that no benefit charge once levied shall be increased, does not enable the commission to increase assessments previously made, in order to pay for extensions and additions, in view of the provision in all three acts that the benefit assessed against any property, as made by the commission, shall be final, subject only to revision at the preliminary hearing.                    pp. 73-80

*Decided April 8th, 1927.*

Appeal from the Circuit Court for Montgomery County (PETER, J.).

Mandamus proceeding by Jack G. Scrivener and Gertrude C. Scrivener against the Washington Suburban Sanitary Commission. From a judgment granting the writ, the commission appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Charles W. Clagett* and *T. Howard Duckett,* for the appellant.

*Wilson F. Townsend* and *F. Regis Noel,* for the appellees.

*Caesar L. Aiello,* as *amicus curiae.*

PARKE, J., delivered the opinion of the Court.

The appellees are the owners in fee of a parcel of land, with a frontage of seventy-eight feet on a public street in the town of Kensington, Montgomery County, and within that portion of Montgomery and Prince George's Counties which comprises the Washington Sanitary District. An assessment for water and sewerage systems was imposed in 1923 by the Washington Suburban Sanitary Commission at the rate of nine cents for the former and of seven cents for the latter, to continue throughout a period of fifty years, for every foot of this frontage. In 1925, this front foot rate of assessment was increased to twelve cents for the water system and nine cents for the sewer. The appellees admit that the first assessment is valid, and tendered themselves ready and willing to pay it. Their objection is to the increase, on various grounds, but it will be not required to consider any but the one involving the correct construction of the statutory law in force throughout the sanitary district. For the purpose of compelling the commission to rescind its action in increasing these two rates against

their property, the appellees filed in the Circuit Court for Montgomery County a petition for mandamus against the commission. This petition was answered, and appellee's demurrer to the answer was sustained, whereupon, as appears from a stipulation of the parties filed in this Court, the appellant submitted to a judgment on demurrer, a writ of mandamus went forth, and this appeal was taken. The facts, therefore, are not in dispute.

The town of Kensington had constructed water and sewerage systems for the use of the properties and of those living within its limits, and had operated and maintained these systems until October 30th, 1922, when they were duly acquired by the Washington Suburban Sanitary Commission at a purchase price representing the construction cost of the systems to the town. The commission assumed the outstanding bonds which had been issued by the town on account of these public works; and relieved the appellees as abutting land-owners (a) from paying their front foot proportionate share of two-thirds of the whole yearly interest charge and the annual cost of redemption of one thousand dollars of a bond issue which was not to exceed fifty thousand dollars, and which was to be paid at the rate of one thousand dollars yearly, beginning for the first of said payments at the end of three years from the date of the bond issue; and (b) from paying, along with all the other taxpayers of the town, the remaining one-third. Acts of 1914, ch. 829, secs. 1, 2, 7, 8; Acts of 1916, ch. 241.

The commission was fully authorized to acquire these municipal water and sewerage systems, and in the concession by the appellees that the original assessment of benefits against their property is valid and operative was involved an admission that all the necessary preliminary acts for the legality of the first rates of assessment had been duly done. So it must be accepted that the levy on July 1st, 1923, of the special assessment, was after the commission had caused surveys, plans, specifications, and estimates to have been made for the water supply and sewerage

system in the particular sub-district in which Kensington
was situated, after the commission had completed the plans
for the projected public works, and after the commission
had given the prescribed notice by publication of the con-
templated improvements and their probable cost, and that
their plans might be seen, and that at a time specified any
person interested in the matter would be heard. These pro-
visions for notice to those persons interested in the pro-
posed improvements and for a hearing of them at a specified
time were mandatory provisions of the Acts of 1918, ch.
122, secs. 4 and 7, and conditions precedent to the under-
taking by the commission of any projected general plan.
They afforded to the landed property owners of the sub-
district the only opportunity for discussion, suggestion, or
objection, with a view to the modification, revision, or
rejection by the commission of the plans submitted. The
measures proposed were authorized on the theory that they
would subserve the general welfare of the residents of that
sub-district and so it was of the utmost importance that the
wisdom, utility, and financial practicability of the project,
as tentatively adopted, should be first submitted to the test
of a public hearing, at which those who would have to bear
the cost could search the soundness, completeness, and prac-
tical utility of the plans, expose their financial inexpediency,
or urge any ground of opposition. The imperative form
of section 4, with the details directed to be included in the
notice, and the plain command of section 7, that the com-
mission is not to decide to proceed with the construction
until "after opportunity for a hearing has been given,"
prevent a construction that the provision for a hearing, after
notice, was merely directory. Nor is it tenable that the
necessity of a hearing, after notice, is dispensed with by
the repeal and re-enactment of section 4 by the Acts of
1924, ch. 189, sec. 4. As thus amended, section 4 no longer
prescribes the method of notice and its contents, nor uses
the imperative form of "shall give notice," but requires
"that wherever such construction is upon the motion of the

commission, without petition or request from any party interested, said commission may give such reasonable notice as it deems advisable."

If this language stood alone it would present some difficulty, but it must be read in connection with the remaining provisions of the statute, and a construction made which will give, if possible, harmonious effect to all the terms. Section 7 remains unchanged in its requirement that, before the commission make a decision to proceed with any of the authorized public improvements, it shall be "after opportunity for a hearing to be given." See section 7 of chapter 518 of Acts of 1920. So, a reasonable conclusion from the language of the amended section 4, and of the unchanged section 7, is that prior notice and a hearing must be given of the projected construction of a water supply, sewerage, or drainage system, to all those interested who have not petitioned or requested the commission to construct the public work contemplated. This construction is not only consistent with the terms of the statute as amended, but also gratifies a legislative intent, sufficiently expressed, that costly and extensive public improvements by a centralized and bureaucratic commission shall not be undertaken until its contemplated action may become the subject of investigation and public hearing.

This conclusion, however, is confined by the text of the statute to the adopted originating surveys, plans, specifications, and estimates of the particular system when first projected. The requirement of a prior notice and hearing is accordingly limited to the occasion when the commission, intending to initiate an authorized system, has adopted the tentative general plan for that system. After the notice and hearing and the final adoption of the plan, changes in the specifications, subsequent modifications and alterations of the first plan, later additions supplementary or complementary to the original system, are within the exercise by the commission of a reasonable discretion necessarily committed, and may be undertaken by the commission without a prior notice and hearing.

As has been stated, the appellees and the other persons interested are conceded to have had notice of the hearing preceding the final adoption by the commission of the plans under which the systems of water supply and sewerage disposal were to be constructed, and the controversy here does not arise over the building of another and different system, but over an increase of benefits assessed against appellees' property and other abutting owners because of alleged additional advantages to abutting property following the construction of a trunk line sewer and water mains throughout the district, but complementary to the original systems built and necessary for the adequacy and maintenance of both systems. For this indispensable additional construction, to improve and develop an existing system, neither notice nor hearing was a prerequisite to the commission's authority.

2.   The questions on this appeal, therefore, do not hinge on the power and procedure of the commission in the construction of these adjunctive improvements and trunk line to subsisting water and sewer systems, but they do involve the power of the commission to increase an original benefit assessment against an abutting landowner because of such subsequent developments; and, if such power exist, the right to make any such additional assessment without notice and opportunity for a hearing.   The answer to these inquiries is clearly made by the statutory law of the commission's being.

The funds for the purchase and construction of the water supply and drainage system in the sanitary district are provided by the issue and sale of bonds, from time to time, and in such amounts as the commission may deem necessary to carry on its work, but the total of all bonds issued, exclusive of those assumed in the purchase of an existing system, shall at no time exceed twelve per centum of the total assessable basis of all property assessed for county purposes within the sanitary district, and each issue of bonds shall mature not exceeding fifty years from the date of issue, and be guaranteed as to payment of principal and interest by both Montgomery and Prince George's Counties in such proportion as the assessable basis of that part of either county within the sani-

tary district bears to the assessable basis of the whole of the district. Acts of 1918, ch. 122, sec. 5; Acts of 1924, ch. 189, sec. 5. The payment of the principal and interest of the bonds is to be met by an annual tax upon all the assessable property within the sanitary district so long as any of said bonds are outstanding and unpaid, and the rate of this tax is ascertained by the sanitary commission, after deducting all amounts in their hands applicable to the payment of the interest and principal on the bonds issued and outstanding. If any deficiency should arise in any year, the deficiency is to be added and collected in the next year's tax. Acts of 1918, ch. 122, sec. 6. The only funds in the hands of the sanitary commission available for the payment of the principal and interest of these bonds are (a) all sums collected by the commission for benefits levied against property in the sanitary district for water supply, sewerage, and drainage construction and (b) one-half of all moneys collected by the commission for water, sewer, and drain connections as provided in sections 8 and 11. Acts of 1918, ch. 122, sec. 12. The chief source of such revenue is from the benefits assessed on the abutting property owners of the sub-districts into which the commission is charged with dividing the sanitary district.

These benefit charges are thus made. The statute commanded that the commission divide all the properties binding upon a street, lane, or alley or right of way, in which a water pipe or sanitary service is laid, into four classes for the purpose of assessing the benefits flowing from the construction of water supply and sewerage systems. The classification into which all the property of such abutting landowners was to be divided and grouped was (1) agricultural, (2) small acreage, (3) industrial or business, and (4) subdivision property. The classification could be changed, from time to time, so as to conform to altered use. The benefits assessed on each class of property were to be based on the number of front feet so abutting upon the water pipe or sewer line of every property, and were to be uniform in rate for every one of the classes of property, except under certain specified conditions. The procedure prescribed that

upon the commencement of a water supply or sewerage project in any sub-district, the commission would fix and levy a benefit charge upon all the abutting property in that district in accordance with the rate and classification made; and then should notify in writing every owner of the class into which his property fell of the charge determined for every front foot thereof, and of the time and place when and at which the owner would be heard. This preliminary classification was confirmed and the determination of benefits charged was adopted, unless revised at the hearing. After the hearing and determination of the benefits to be assessed, the statute expressly provided that no benefit charge could be subsequently increased. Acts of 1918, ch. 122, sec. 8; Acts of 1920, ch. 518, sec. 8.

In the purchase of the water works and sewerage systems of Kensington, the commission fully complied with the statute. The appellees and other abutting property owners had their properties classified, and the appellees were notified of the classification of their property and of the uniform rate at which every front foot was assessed, and of the time and place at which the owners would be heard in reference to the action of the commission. The classification was ratified and the assessment became final as the annual charge upon appellees' land for a period of fifty years.

This assessment or special benefit charge was levied on July 1st, 1923. Without any change in the water and sewer mains along which their property fronts, without any notice whatsoever of a proposed increase in the water and sewer benefits to be levied upon their property, and with no opportunity afforded to show cause against this additional charge, the commission passed its wholly *ex parte* order of increase for the year beginning July 1st, 1925, and levied the greater rate upon the property. The first information the appellees had of the commission's action was given by the receipt of their yearly tax bill showing the additional benefits assessed. In response to their protest, the appellees received a copy of the resolution and order passed on June 10th, 1925, impos-

ing the charge. This document began with a recital of the conditions in justification of its course. The statement is made that the unprecedented growth and spread of population within the sanitary district has necessitated, from time to time, the expenditure of large sums and the incurring of liabilities in construction of trunk line sewers and water mains necessary to reinforce and augment the existing system, in order to protect the public health and to maintain the efficiency of water and sewer systems; and that at the time of the purchase of the original systems and the subsequent construction, from time to time, the commission had deemed it inexpedient to anticipate the present demands on the systems, so that, in laying the benefit charges on the existing systems, the above mentioned expense and incurred liabilities were not provided for, and no benefit charges have, therefore, up to this time, been imposed for benefits due to such additional construction and which have accrued to the abutting properties. The answer of the respondent was an amplification of this almost literal rendering of the preamble to the order, and so there is no need to set forth any of its contents, except to note the commission's further statement that its annual sinking fund and interest obligations were approximately seventy-six thousand dollars in excess of its actual receipts from the collection of the benefit charges and of the general tax upon all the assessable property within the sanitary district, so that it became necessary to increase either the general tax rate or to increase the front foot benefit charge, and that, after a consideration of the situation from every angle, the commission had determined it was more fair and equitable to choose the method of increasing the front foot charge, and, accordingly had passed the order pursuant to the terms of section 8 of the amended statute.

The relative justice and expediency of the commission's decision this Court must ignore. The conclusion of a judicial tribunal is not governed by the integrity and judgment of administrative officers in the performance of the particular act under review, but by the source, the scope, and the

nature of their delegated official powers and authority. When the order is thus regarded the question becomes one of statutory construction; and if no power nor authority is conferred upon the commission to make this increased or additional benefit charge, the other points argued become immaterial. The position of the appellant depends upon the effect of an amendment made to section 8 by chapter 189 of the Acts of 1924, and requires this amendment to operate retroactively, since, by the original section in the Acts of 1918, and by its amended form in the Acts of 1920, ch. 518, the appellant was irrefutably denied by explicit terms the power to increase a benefit charge when once levied.

To support the view that the Legislature intended in 1924 that its amendment should not only affect and govern the benefits to be assessed on the initiation of future systems, but also to repeal an express declaration under which past assessments had been made, should at least require an express and unequivocal declaration of legislative purpose. None is to be found. The amendment of section 8 in 1924 was with a different object. Almost all of the modifications of section 8 were made by the amendatory Act of 1920, ch. 518, sec. 8, and the appellee does not argue that the statute as reenacted in 1920 did not prohibit an increase. Consequently, the legislative purpose in passing the amendatory act of 1924 is to be found in a comparison of section 8, as changed by the Acts of 1920, with the section as it now stands. Aside from two minor changes in the method of determining the frontage for assessment of an irregularly shaped lot and of a lot with front and rear on separate streets, the only subject-matter expressly dealt with by the General Assembly in 1924 was an entirely new and elaborate procedure prescribed for the collection of unpaid yearly benefit charges by a bill in equity, wherein all parties then in default are to be made co-defendants, and to be notified by publication to appear and answer, with the object of obtaining in this single proceedings separate decrees and liens against the several co-defendants and their respective abutting properties. This new

procedural remedy, which involved other features not perti-
nent to the question at bar, required an elaborate presenta-
tion for its enactment, and the conclusion that it was the
principal end of the enactment needs no argument.    From
the first word until its first proviso, section 8 as amended
in 1924 is identical with the section as found in the Acts of
1920, and in the original law of 1918, with the single excep-
tion that the first law did not contain after the words, "in
any district," which are in the eighth printed line of the
published statute, the clarifying phrase "as defined by said
commission under the provisions of section 4." This sub-
stantial identity of form and absolute identity of substance
of section 8, in the three enactments, to the extent men-
tioned, is important, since in this part of the law is created
the power in the commission to assess benefits based on the
number of feet fronting on the improvements, and to classify
the abutting properties into a four-fold division.    Within
this compass, also, is prescribed when the assessment of
benefit charges is to be made, and the provision for a hear-
ing on the classification and the charge preliminarily deter-
mined; and the kind and form of the notice to be given to
every abutting property owner, and the manner of its serv-
ice.    And this portion of section 8 includes these two closing
sentences: "The classification of and benefit assessed against
any property as made by the commission shall be final, sub-
ject only to revision at said hearing.    The commission may
change the classification of properties from time to time as
said properties change in the uses to which they are put."
The effect of this enlargement of the scope of the power
of the commission, with respect to the classification of
properties as the nature of their use changes in the future,
is in marked contrast to the limitation of its power in charg-
ing benefits, whose front foot rate for any particular class
of property becomes final after the hearing.

What follows the portion of section 8 now under discus-
sion are mainly regulatory details in reference to the execu-
tion of the powers thus granted and the performance of the

duties so imposed.    However, in the midst of these pro-
visions, there is inserted in the Acts of 1918 and 1920 a
repetition of the declaration that a front foot assessment
once levied shall not be increased.    In the Acts of 1920, ch.
518, it is found in section 8 in this clause of the sentence
beginning: "Front foot benefit charges for water supply
and sewer construction shall be uniform for each class of
property throughout the district defined by the commission
under section 4, for any one year and no benefit charge
once levied shall be increased."    The circumstance that in
the amendment of 1924 the words "and no benefit charge
once levied shall be increased" are omitted from the portion
of the section last quoted would seem from the context to
have been done more through accident than by design, but the
sole effect of its dropping out is merely to reduce by one the
number of times an increase in the assessment or charge is
prohibited by the express terms of the statute.    The single
denial of the right to increase the benefit charge in the
Act of 1924 is as effective as the double denial in the two
preceding laws.

Before reaching this conclusion, the statutory law has
been scanned and nothing of weight has been found ex-
pressive of a different legislative intent.    The position of the
appellant meets opposition at every point.    It was not in-
tended that benefit charges were to be assessed piecemeal
nor without notice and a hearing.    The mandate of the
statute is that the benefit charges are to be assessed, not
after the work of construction has been completed, but
"immediately upon the commencement of a water supply or
sewerage project in any district."    The assessment attempted
to be levied in the instant case was not upon the commence-
ment of a system, but was after complementary work had been
done on existing systems in order to make them more efficient.
Further, these annual charges are made when the estimated
cost of the improvements under the original plans and speci-
fications are matters of estimate, and not after their actual
cost has been made certain by the completion of the improve-

ments, since these benefit charges do not await the con-
clusion of the work, but "said benefit charge shall be paid
annually beginning in the year such construction is begun
by all properties * * * for a period of years co-extensive
with the period of maturity of the bonds out of the proceeds
of which such construction was done."

The acquisition by purchase of existing systems is equiva-
lent to the commencement of a system for the purpose of
denoting the time for classification and assessment, and it
is hardly consistent with the last quoted language of the
act, indicating an unvarying payment through a series of
years, that this charge may be changed from time to time
by the commission as costs and conditions change.    This
contention of the appellant would write a new statute.    The
commission's theory that the entire cost of original construc-
tion, with the cost of such further later construction as may
be required from time to time, to make and keep the systems
adequate and efficient under circumstances of increased
demand, may be laid as frequently as required as a benefit
charge upon the property owners with frontages abutting
upon the mains of the systems, is not supported by the
statutory law.

The charges to be imposed are based upon the general
benefits to be derived by the abutting properties from the
installation of a particular public improvement.    It is the
right of these owners to have submitted at one time the
plans, specifications, and estimates of total cost for a com-
plete unit, which when constructed would be adequate and
efficient to meet the present and future public necessity to
be served.    Since it was in anticipation of the installation
of such water and sewerage systems that the benefits were
authorized to be estimated and made a lien through a single
act of the commission, it was not in its power later to act
and impose a further benefit charge for an expense not
within the contemplation of the commission at the time of
its original assessment.    Under the terms of the statute the
landowner is assessed for the future benefits to his prop-

erty that are anticipated to result from the right to have
the continuing use of the public utility on which his prop-
erty will abut, so the keeping by renewal and complementary
construction of that utility in such a degree of efficiency as
adequately to discharge the service originally projected is
only maintaining the utility for the purpose which was
necessarily in contemplation at the time when the benefits
were charged, and hence does not create a new system, but
simply assures to the abutting property owner a service for
which in law benefits had been fully assessed.

*Judgment affirmed, with costs.*