WASHINGTON SUBURBAN SANITARY COMMISSION ET AL. *v.* RENEE NOEL.
[No. 37, April Term, 1928.]

428

[redacted]

*Decided June 21st, 1928.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*T. Howard Duckett* and *Charles W. Clagett,* for the appellants.

*Wilson L. Townsend* and *F. Regis Noel,* for the appellee.

BOND, C. J., delivered the opinion of the Court.

This appeal is from the overruling of a demurrer to a bill to restrain the collection of an increased special assessment or supplementary charge of benefits made under statutory authority, after a like charge, under an earlier statute, had been held invalid in the case of *Sanitary Commission v. Scrivener,* 153 Md. 68. Areas in Montgomery and Prince George's Counties, near the District of Columbia, to be supplied with new sewerage, water and drainage systems, have been combined and organized by act of assembly into a special district, and it has been provided that the cost of the improvements should be paid ultimately by levy upon the properties in the district in two ways, by a general *ad valorem* tax and also by additional or special assessments per front foot upon properties abutting on streets, lanes, or alleys in which the pipes are laid, for the peculiar benefits accruing to those properties. Acts 1916, ch. 313; 1918, ch. 122; 1920, ch. 518, and 1924, ch. 189. *Dahler v. Washington. Sub. San. Commn.,* 133 Md. 644. And the commissioners appointed under the acts were to classify the properties in the district and fix the amount of the front foot charge for those of each class. Construction was duly begun, and that in the street in front of the Scrivener property was finished, and a front foot benefit charge was duly assessed and paid as long as the particular amount was accepted. In all the last three acts of Legislature specified, it was provided that "the classification of and benefit assessed against any property as made by the commission shall be final," subject only to revision at a hearing which was provided for. The acts of 1918 and 1920 also contained a provision that no benefit

charge once levied should be increased; but that was omitted from the act of 1924. In 1925 the commission, without notice or opportunity for a hearing, increased the front foot benefit charges upon all properties of the various classes for the purpose of defraying the cost of reinforcement and augmentation of the systems, required by an unanticipated growth and spread of population within the district. In the *Scrivener* case, however, the lower court ordered the writ of mandamus to issue directing the commission to rescind that levy, and the order was affirmed by this court, because under all of the last three acts notice and opportunity to be heard were required, and an additional assessment was expressly prohibited. Since that decision the General Assembly has passed a further, curative, act (1927, ch. 506), providing that: "All front foot benefit charges heretofore levied by said commission, whether by original levy or by increase, as the same stood charged by said Commission against the respective properties on December the 31st, 1926, are hereby ratified and confirmed and determined to be a reasonable charge, and such front foot benefit charges as the same had been levied or increased by said Commission are hereby declared to be a lien upon the properties against which the same were charged by said Commission and enforceable as a lien under the provisions of the law relating thereto at the time the same were in default. The front foot benefit charge herein levied shall not be increased nor shall any additional front foot benefit charge be levied against the property upon which there had been levied a front foot benefit charge as of December 31, 1926."

The appellee, an owner of property situated similarly to that considered in the *Scrivener* case, and similarly assessed, after alleging these facts, prays an injunction against the increased front foot charge on the ground, that (1) the Act of 1927, in its attempt to overcome the deficiency because of which the assessment had been held invalid in the *Scrivener* case, merely reversed that decision, and in doing it assumed a judicial function, within the ruling in *Baltimore v. Horn,* 26 Md. 194; that (2) no benefit for which an addi-

tional charge could be levied would accrue to the complainant's property from the further construction and installation which is to be paid for, and a benefit charge would for that reason be invalid because depriving the complainant of her property without due process of law and without compensation; that (3) the Act of 1927, properly construed, gives authority only for the original assessments previously recognized by this court as valid, and not for the increase; and that (4) the Act of 1927 is void because it attempts to authorize an assessment in varying amounts for a benefit which it states is to be equal.

The decision in *Baltimore v. Horn, supra,* was that a legislative authorization of the city officials merely "to collect and receive" sums previously assessed under ordinances held invalid was a plain reversal of the judgment of the court, an attempted exercise of judicial power, and so beyond the powers of the General Assembly. A special statute had required that, before grading and paving North Avenue in Baltimore City, the mayor and city council should determine whether the work was for the public good, and should then assess damages as well as benefits to abutting lots, but the city commissioner had pursued the ordinary course for grading and paving within the city limits, and there had been no previous determination by the mayor and city council that the work was for the public good, and no damages had been assessed. And a charge made for benefits was held to be in contravention of the statute. Then the Legislature ordered the sums so assessed to be collected and received, and this was held to be a usurpation of a judicial function as stated. The point was not much argued in the opinion, but the citations in it show that the court regarded the act as the same in effect as acts interfering in particular judicial proceedings. The case of *Denny v. Mattoon,* 2 Allen (Mass.) 361, described as directly in point, was one in which the Legislature undertook to confirm proceedings in insolvency had before a supposed judge who was in fact without title to the office, and which the Massachusetts Supreme Judicial Court had held invalid for that reason. And

the Maryland cases cited were instances of similar interference. None of the cases cited involved an act to provide subsequent legislative ratification of the action of a public body dependent upon legislative authority and held invalid for want of it. And the great weight of authority, including that of the Massachusetts court, is to the effect that authority which the Legislature might have given in advance is equally effective when given subsequently, notwithstanding an adjudication meanwhile on the lack of the previous authority. See review of decisions on "Validity of curative statutes impairing judgment or rendering it ineffective," in note, 25 A. L. R. 1136. *Hodges v. Snyder,* 261 U. S. 600.

Putting aside, however, any question of the weight of authority on the principle elsewhere, and giving the case of *Baltimore v. Horn* the effect contended for by the appellee, we still have to consider the effect of the rules adopted in other Maryland decisions, that after a first assessment has been found unauthorized, a new assessment might be authorized by the Legislature, and that the Legislature might fix the amount of the charge to be assessed, and that therefore, an act, adopting the form of an original assessment, might validly provide for the levy of exactly the amount levied under the previous invalid proceeding. *Baltimore v. Ulman,* 79 Md. 469; *Leser v. Wagner,* 120 Md. 671; *Dinneen v. Rider,* 152 Md. 343. The difference between such an act, in the form of an original assessment for the same amount, and an act like the present one ratifying and confirming the assessment of that amount as previously charged, accompanying it with a finding that it is reasonable and that the property so assessed is benefited, seems to be little more than a difference in words. In each act the Legislature adopts as its own an amount previously fixed. We do not see any logical reason for holding that in thus subsequently providing the legislative foundation previously found lacking, there is a reversal of the judgment of the court and an assumption of a judicial function. We therefore conclude that the ratification in the act of 1927 is not invalid for

this reason. See *Havre de Grace Water Co. v. Havre de Grace,* 150 Md. 241, 253.

As we view it, this present act makes, in substance and effect, a new, legislative, assessment of the amounts previously charged on the complainant's property, and we have to deal with a case in which there has been a determination by the Legislature for itself of the district on which the cost of the improvements is to be assessed, and of the amount of front foot benefit charges which are reasonable, and an actual legislative imposition of those charges. This analysis of the case furnishes, under the authorities, the answers to most of the objections made to the validity of the assessment, for it is well settled that a special benefit assessment by the Legislature directly, upon its finding that the land charged is benefited, is valid and final, beyond interference by the courts, in the absence, at least, of a showing that the determination is plainly arbitrary in some respect, and an abuse of power, such as is not alleged in this case. *Leser v. Wagner,* 120 Md. 671, 677; *Lyon v. Hyattsville,* 125 Md. 306, 311.

The objection that, according to the allegations of the bill, no benefit has in fact accrued to the complainants' property, is the second one upon which the decision in the court below chiefly turned. An expression in the conclusion of the opinion in the *Scrivener* case is cited as a determination that there was no benefit to the Scrivener lot from the expenditure to be met by the second assessment, and that for this reason the second assessment was without foundation in law. But the court was not in that case dealing with the question whether the amount of the increased assessment exceeded the amount of special benefits in the district, nor was it dealing with the appropriateness of defraying cost from general county taxes or by a general *ad valorem* tax rather than by front foot apportionment. And especially was it not dealing with a legislative determination of the existence and the amount of benefits, as here. The decision was solely on the question of authority under the statute, as it then was,

to make an increased front foot assessment of abutters without notice and opportunity for a hearing.

Beyond this, the contention that the increased front foot charge was not justified by any special benefits to the property in this case is based on several arguments. To some extent, it seems to assume that there must be a benefit peculiar to the one property rather than to all the properties in the special district, treated as a whole. And so far as this is the argument, it is opposed to the plan adopted in the act, and opposed to decisions which uphold such a plan. A front foot charge on property in a selected district and class is an averaged charge, necessarily overlooking possible differences in benefits to individual holdings in the district and classification, for the class is the final basis of assessment. And it has long been settled that the Legislature may so classify properties for apportionment of the cost, and that the courts will not interfere except when the classification is shown to have been palpably arbitrary, and constituting a plain abuse of power. *Dinneen v. Rider,* 152 Md. 343, 365; *Dahler v. Washington Sub. San. Commn.,* 133 Md. 644; *Welsh v. Coglan,* 126 Md. 1; *Leser v. Wagner,* 120 Md. 671; *Baltimore v. Stewart,* 92 Md. 535; *Cooley, Const. Lim.* (7th Ed.), 729; *Seattle v. Kelleher,* 195 U. S. 351; *French v. Barber Asphalt Co.,* 181 U. S. 324; *Spencer v. Merchant,* 125 U. S. 345, 355; *Missouri Pac. R. Co. v. Road District,* 266 U. S. 187. And, as has been observed, there is no allegation of arbitrary action or abuse of power, in making the classification for front foot charges here.

Taking the classification then to be a proper basis for assessment of front foot benefit charges, it is argued that the levy of the increase on the complainant's property is still unconstitutional because the amount of benefits had been fixed for that property and partly paid, and because the increased outlay to be met by the commission was based on no change in construction in front of the property, and no change in supply to it, and that for these reasons the additional cost, must, following the benefits from it, be met by assessing other properties actually benefited, by increasing the

general *ad valorem* tax throughout the district, or by general county taxes. We do not see any principle upon which the additional front foot assessment on this property could be held unconstitutional merely because there had already been an assessment levied on it. So long as the constitutional limits are not exceeded on the whole, there seems to be no illegality in making a total permissible charge in more than one assessment. Supplemental assessments are common and have generally been upheld. 1 *Page & Jones, Taxation by Assessment,* sec. 954; *Kadow v. Paul,* 274 U. S. 175.

Whether the increased cost to be met should be defrayed rather by assessments confined to other properties in the district or by increase in the general *ad valorem* tax on the district as a whole, or on the counties, may be answered in part by the rule already cited, that the Legislature has power to classify properties in a special district to defray the cost of a benefiting improvement, and that its decision is final, in the absence of a showing of arbitrary action and plain abuse of power.

It is clearly settled in this state that the Legislature might require the entire cost of installation of an improvement to be defrayed by front foot assessments on properties within a specially benefited district. *Dinneen v. Rider, supra; Hyattsville v. Smith,* 105 Md. 318; *Baltimore v. Scharf,* 54 Md. 499; *Baltimore v. Moore,* 6 H. & J. 375. And this being so, there can be no unconstitutionality in its assessing any part of the cost by this method. The cases which deal with assessing locally a cost which is clearly one of the general expenses of government can hardly have any bearing on the problem of apportioning costs of original installation within a specially benefited district; and here the district exists only as one benefited by the improvements.

The objection raises, however, the more important question whether the installation of the trunk line sewers and water mains required to meet the needs of the increased population, and which, according to the allegations, caused the increased assessment, can be considered as included in the original installation of the improvement, for which benefits might

properly be assessed throughout the district. There must be a time when the benefiting installation is to be regarded as completed, and after which additions and extensions would be in the nature of upkeep or of new improvements, the cost of which should either be paid as part of the general governmental expenses or be defrayed by assessments on the newly supplied property; and, on the other hand, original installation in a growing community must be taken to include adaptations to changed conditions during the course of the work. The mere allegations that the additional construction necessitated in this instance from the increase in population is remote from the complainant's property, involves no change in its neighborhood, and brings no benefit to the property, does not present a case of a general governmental expense to be met only by general county taxes, for the expense appears to be one of construction of an improvement, taxes for which, under the authorities already cited, may, at least, be confined to the specially benefited district. It appears that the construction is still part of the original installation, although it is enlarged to meet the changed conditions; and this being true, we see no ground for holding that it may be arbitrary and a plain abuse of the power of the Legislature to cause the cost of it to be apportioned as part of the front foot benefit charges.

The third general contention of the complaint is that the Legislature, in ratifying and confirming by the Act of 1927 the assessments standing on the commission's books on December 31st, 1926, must be considered as intending to ratify and confirm only the legal assessments made before 1925, because before the Act of 1927 was signed the assessments of 1925 had been held invalid. That contention does not allow, however, for the express inclusion in the ratification of benefit charges "by original levy or by increase," and we have not been able to agree in it.

There is only a very general allegation in the bill that the amounts of assessments for equal benefits have varied and lacked uniformity. Of course, some lack of uniformity may have occurred without rendering the assessment invalid. As-

sessment by classification of properties inevitably brings some lack of uniformity. On the specific facts alleged in the bill, no invalidity on this ground is apparent, and from the arguments and briefs we infer that there are no other facts to be adduced. If there are such other facts they should be more definitely pleaded before an answer is required. *Lipson v. Evans,* 133 Md. 377; *Boyd v. Shirk,* 125 Md. 179.

> *Decree reversed, and bill dismissed with costs to the appellant.*

PARKE, J., delivered the following dissenting opinion, in which OFFUTT, J., concurred.

The importance of this case and the ability and persuasiveness with which the prevailing views are stated require the statement of the reasons for a dissent.

The petitioner's property had benefits duly assessed against it in 1923, at the rate of ten cents a linear front foot for the water system to be installed and of twelve cents a linear front foot for the sewer system, amounting to $22.03 for the water system and $25.03 for the sewer system yearly during a subsequent period of fifty years, unless earlier discharged by the petitioner availing herself of one of two methods of commutation by an anticipatory payment in money. After the hearing and determination provided by the statute for the benefits to be assessed, it was expressly enacted that no benefit charge could be subsequently increased. Acts of 1918, ch. 122, sec. 8; Acts of 1920, ch. 518, sec. 8; Acts of 1924, ch. 189, sec. 8; *Sanitary Commission v. Scrivener,* 153 Md. 68, 77-80. So, in *Sanitary Commission v. Scrivener, supra,* where, as in the case at bar, the controversy did not arise over the building of another and different water or sewer system, but over an increase in benefits assessed against the owner's property and that of other abutting owners, because of alleged additional advantages to the abutting property following the construction of a trunk line sewer and water mains throughout the district, but complementary to the original system

built and necessary for the adequacy and maintenance of both systems, this court held that, while the commission had the power to improve and develop existing systems by adjunctive improvements and trunk lines, it had no power to increase an original benefit assessment against an abutting landowner because of such subsequent developments.

In the *Scrivener* case, and in this, the additional construction was not in front of nor near the abutting owner's property, but in other portions of the sanitary district, so there had been no change in the water and sewer mains or other construction upon which the owner's property abuts since the assessment of benefits in 1923, and what was said by this Court in the *Scrivener* decision with respect to the *nature* of the benefits assessed is applicable to the appeal at bar: "The charges to be imposed are based upon the general benefits to be derived by the abutting properties from the installation of a particular public improvement. It is the right of these owners to have submitted at one time the plans, specifications and estimates of total cost for a complete unit, which when constructed would be adequate and efficient to meet the present and future public necessity to be served. Since it was in anticipation of the installation of such water and sewerage systems that the benefits were authorized to be estimated and made a lien through a single act of the commission, it was not in its power later to act and impose a further benefit charge for an expense not within the contemplation of the commission at the time of its original assessment. Under the terms of the statute the landowner is assessed for the future benefits to his property that are anticipated to result from the right to have the continuing use of the public utility on which his property will abut, so the keeping by renewal and complementary construction of that utility in such a degree of efficiency as adequately to discharge the service originally projected is only maintaining the utility for the purpose which was necessarily in contemplation at the time when the benefits were charged, and hence does not create a new system, but simply assures to the abutting prop- .

erty owner a service for which in law benefits had been fully assessed."

This statement was in harmony with the then subsisting statutory law, and but formulated the basis for the legislative declaration and intention that the benefits assessed should be complete and should become final after the hearing, and should not be afterwards increased. A mistake in judgment did not affect the finality of the amount determined. If the error be against the abutting landowners, they must bear it, or, if in their favor, the taxpayers within the sanitary district would sustain the burden of the mistake. The statute in force at the time made the benefits assessed against the abutting landowner's property adequate, complete, and final, and not subject to an increase by the commission under the circumstances of the *Scrivener* case, *supra*. See *Baltimore v. Scharf,* 54 Md. 499, 514.

The facts of the *Scrivener* case are the facts of the present appeal, and a like result would follow unless chapter 506 of the Acts of 1927 would compel a different conclusion. The statute was passed after the decision in the *Scrivener* case, and attempted to "ratify and confirm" the additional benefits imposed by the commission and declared invalid by this tribunal in the *Scrivener* case, and to determine the same, together with the original assessment, to be a reasonable benefit charge and to make both a lien upon the abutting properties. Including the original assessment of benefits with the one in controversy was unnecessary, since no one has ever assailed the first assessment. Curiously enough, the law further provides, as did all its predecessors, that "the front foot benefit charge herein levied shall not be increased nor shall any additional front foot benefit charge be levied against the property upon which there had been levied a front foot benefit charge as of December 31, 1926." Acts of 1927, ch. 506, sec. 8, p. 978. However, this legislative declaration is but a temporary restraint upon the commission, since the majority opinion recognizes the power of the General Assembly to increase the assessment for benefits, from session to

session. If the Legislature may thus increase the assessment, it may delegate this power to the commission.

The question in the *Scrivener* case was the authority of the commission to increase the benefit charges upon abutting property owners, and the problem presented by chapter 506 of the Acts of 1927 was not involved. But the *Scrivener* case derives its importance in the determination of the one at bar from the fact that it expressly considered and directly decided that the assessment of benefits against the abutting property owners was a full, complete, and final ascertainment and determination of the amount of permanent benefits to be assessed against the property. So, when either the commission or the General Assembly attempts to increase the benefits formerly duly assessed, under the circumstances of this record, the action so taken by either is attempting to assess again benefits which have already been duly included in a prior adjudication, after hearing, by the constituted authority. In the *Scrivener* case, the court went no further than holding that the statute neither contemplated nor authorized the increase. If no more were involved in the present appeal than the authority of the Legislature to make valid an assessment by the commission that was illegal because the Legislature had failed to delegate sufficient power to the commission, there would be no difficulty in sustaining the provisions of chapter 506 of the Acts of 1927 that are now in controversy. *Baltimore v. Ulman,* 79 Md. 469; *Leser v. Wagner,* 120 Md. 671; *Hodges v. Snyder,* 261 U. S. 600; *Havre de Grace Water Co. v. Havre de Grace,* 150 Md. 241, 253. But in the case at bar the commission had exhausted its power of assessing benefits by ascertaining and duly adjudicating their amount; and, after this lawful determination, the Legislature intervened and declared, in effect, that the benefits equaled the valid original benefits assessed and the additional amount attempted to be subsequently imposed by the commission. In other words, if this legislation be lawful, there are two valid assessments of benefits against the abutting land, the first being the assessment of the commission and the second being that of the General Assembly, which embraces the orig-

inal assessment and an increase in that assessment added by the legislative fiat.

If this power to assess benefits were simply an exercise of the right of the sovereignty to tax generally, which is the power to destroy, the enactment, if equal and uniform in its operation, could be supported as an increase by the State of its rate of taxation, but it is settled and fundamental law in this state that a special assessment upon the land abutting upon a public improvement in a political sub-division can be sustained only upon the theory that the property assessed receive some special benefit from the improvement differing from the benefit that the general public and the other property in the particular sub-division enjoys. *Burns v. Baltimore*, 48 Md. 198, 203; *Bassett v. Ocean City*, 118 Md. 114; *Leser v. Wagner*, 120 Md. 677; *Baltimore v. Ulman*, 79 Md. 482; *Hyattsville v. Smith*, 105 Md. 318; *Lyon v. Hyattsville*, 125 Md. 306; *Alberger v. Baltimore*, 64 Md. 1; *Baltimore v. Johns Hopkins*, 56 Md. 1; *Moale v. Baltimore*, 61 Md. 224; *Baltimore City v. Scharf*, 54 Md. 499; *Consol. Gas E. L. & P. Co. v. Baltimore*, 130 Md. 20; *Baltimore v. Cahill*, 126 Md. 601; *Maryland Trust Co. v. Baltimore*, 125 Md. 50, 51; *Brooks v. Baltimore*, 48 Md. 265. So, if the abutting property derives no special benefit from the improvement, no assessment of benefits can be made, as is well exemplified by *United Rys. Co. v. Baltimore*, 127 Md. 670.

It follows that the question for resolution is neither one of the power of the State to impose an additional general tax on property; nor an instance of a curative statute making valid an assessment of benefits which had failed because of an absence of the authority which the Legislature would have had the constitutional right to grant; nor a case where the Legislature itself has determined that the cost of a public improvement within a political unit for administrative purposes is the measure of the special benefits to its abutting property, and that this cost should be assessed as benefit charges upon the abutting property at a specified rate per front foot.

The inquiry here is more complex. The legislative assessment of benefit charges is the sum of two known quantities. The first is the original benefit charge which was duly assessed by the commission, and which represents, as has been seen, the complete and final assessment of benefits for the two public improvements, and the second quantity is an additional benefit charge, which the commission was powerless to levy but which the Legislature has adopted as a reasonable addition to the first benefit charge so assessed. Before the attempt of the commission to make its second assessment, the water and sewer systems had been laid before the petitioner's property and were in service, and the petitioner and others similarly situated were paying the annual adjudged benefit charges, which were a lien upon the abutting properties and were payable yearly throughout a period of fifty years. To *increase* the benefits assessed was to make the property owner pay again for the same benefits and thus confiscate his property to the extent of the increase, which was a material one for both improvements.

The nature of the increase is illustrated by its effect upon the property of the petitioner, as her case is typical. Her original benefits were $25.03 for the sewer system and $22.03 for the water system, and these yearly charges for a term of fifty years were changed by the action of the Legislature to $33.56 for each system, so that the benefits first imposed for the sewer and water installations were apparently enlarged over thirty-four and fifty-two per centum respectively. The property of the petitioner did not abut upon the trunk lines built since the original construction; and, as the bill of complaint alleged and the demurrer admitted, the property of the petitioner had not been specially benefited by any work done by the commission since the first assessment. The trunk lines were rendered necessary by the unexpected growth of population, and were for the benefit of the general public within the tax assessment district; and so, to assess the cost of their construction as benefits upon the property abutting on the original water and sewer systems cast upon a portion of the land a general burden which should be borne

by the property within the district. To expropriate abutting land to the extent of this large and onerous increase, without any corresponding benefit to that land, is plainly arbitrary, unjust, and illegal, upon the theory that assessment of benefits must depend upon actual benefits conferred or to be conferred by the public improvement. *Supra*.

The special benefit to the abutting land arises from the building and location of the improvement, and the service it is permanently to supply. The assessment is based upon the local nature and special effect of the improvement upon the abutting land, as contradistinguished from its general and indirect advantage to those lands within the political unit, but which do not abut upon the line of the improvement. The requisites for an assessment based upon special benefits to land are not essential to the levying or authorization of a general tax, which may be laid for any public purpose and which is, therefore, not conditioned upon any special benefit to any class of property or of the public.

In the instant case the auxiliary trunk lines were required for the purpose of meeting the general operating requirements of the water and sewer systems throughout the whole district. Although the new construction may be of some incidental benefit to every abutting parcel of land because of its affording greater assurance of continued adequacy in subsisting service, yet this fact does not convert what is fundamentally general in nature to a local improvement. It was an addition analogous in its general utility to the construction of a supplementary pumping station or sewage disposal plant to an existing system, in order to assure the maintenance of universal adequacy of operation to an increased demand due to a rapidly growing population. Furthermore, the lands within the district may in time be connected by lateral lines or otherwise with the new trunk lines of the water and sewer systems, and this potential use is another evidence of the general nature of the additional construction. If the assessment and levy made by the Acts of 1927, ch. 506, were the imposition of a general tax upon *all* the land of the taxing district, it could undoubtedly be sustained as an exer-

cise of the taxing power. But the statute cannot be supported upon the theory of the imposition of a general tax levied for a public purpose. The act declares the assessment and levy is for special benefits to land abutting upon the lines of the original sewer and water improvements; but, instead of specifying the amount of the assessment and levy, it makes and levies the same in this general, inartificial and, so, unsatisfactory manner: "All the front foot benefit charges heretofore levied by said commission, whether by original levy or by increase, as the same stood charged by said commission against the respective properties on December 31st, 1926." What the charges are and what their real nature is are undisclosed, but are referable to and determined by the amounts and nature of the two charges levied by the commission. The legislative statement that these charges are "determined to be a reasonable charge" does not preclude an inquiry into their several nature. If so, the court would be rendered powerless to adjudicate the actual facts according to the constitutional rights of a party by a mere legislative assertion, however unfounded and arbitrary. In matters of taxation the courts are rightly disinclined to review the acts of the Legislature; and when the Legislature is imposing a general tax, the realization that the levy is to affect the Legislature's constituency is usually a sufficient check upon that body to prevent this attitude from becoming harmful. But in the case of special assessments for benefits the check is gone, since this form of taxation takes the burden of the tax from the mass of the citizens and shifts it upon a numerically small class. A measure to relieve the many at the expense of the few makes for its popularity and lessens the consideration given it in popular assemblies. Hence the necessity of the right of courts, while according to any legislative declaration a rebuttable presumption of correctness, to decide, under proper circumstances, the question of the validity of a tax upon the established facts.

The nature of the charges imposed by the act and not their "reasonableness" must determine the constitutionality of the portion of the statute being considered. The record shows

that the statutory assessment and levy under the Acts of 1927 embraced two distinct and separate assessments and levies. The first of these were a special assessment and levy originally and lawfully made by the commission for special benefits conferred upon abutting lands by the improvements, while the second assessment and levy were subsequently unlawfully attempted by the commission against the same abutting lands on the ground of further special benefits. The section of the statute in dispute was, therefore, a reassessment and levy law, whose sole practical purpose and value was to validate the second or invalid special assessment and levy of the commission. In the absence of further special benefits to lands, which abut upon the lines of the original sewer and water systems, and which have had duly assessed and levied against them the special benefits accruing therefrom, a second special assessment and levy cannot later be made against such lands for subsequent construction of supplementary trunk lines and additions upon which the lands do not abut and which are of a general, instead of a local, advantage. The confiscatory effect of the attempted ratification of the second assessment and levy is evident, since the same land is again appropriated for the same purpose to the extent of the amount of the second assessment and levy.

The following quotation from *United Rys. Co. v. Baltimore,* 127 Md. 670, is in point:

"The only principle upon which taxes of this kind can be supported is thus stated in section 236 of *Hamilton on the Law of Special Assessments*: 'No benefit, no tax, is the rule, tersely expressed. An able text writer lays down the general rule that special taxation for a local improvement, as well as special assessments of benefits for the same, necessarily proceeds upon the theory of benefits to the property upon which it is levied, and that a burden imposed upon any other theory is a mere arbitrary exaction; a taking of private property for public use without just compensation. Judge Dillon says: "Special benefits to the property assessed, that is, benefits received by it in addition to those received by the community at large, is the true and only just foundation upon which

local assessments can rest; and to the extent of special benefits it is everywhere admitted that the Legislature may authorize local taxes or assessments to be made." Judge Cooley writes that "there can be no justification for any proceeding which charges the land with an assessment greater than the benefits; it is a plain case of appropriating private property to public uses without compensation," and that "a clear case of abuse of legislative authority, in imposing the burdens of a public improvement on persons or property not specially benefited, would be undoubtedly treated as an excess of power and void." '

"This is the Maryland doctrine upon the subject: *Baltimore City v. Moore*, 6 H. & J. 375; *Baltimore City v. Howard*, 6 H. & J. 383; *Baltimore City v. Hughes*, 1 G. & J. 480; *Baltimore City v. Scharf*, 54 Md. 499."

While the constitutional requirement of uniformity of taxes as to land within the taxing district (a) does not have application to special assessments (b), yet a long line of decisions of this tribunal have denied the unlimited scope of legislative discretion and power, and maintained upon principle that the cost of a local improvement should not be assessed upon particular property except to the extent that it is specially benefited. If such special benefits have been fully assessed, levied, and in the course of payment, the corollary to this principle is that they cannot again be subsequently imposed, much less duplicated, in whole or in part, when the occasion is either a supplementary construction or an improvement which purports or appears to be for the general benefit. (c) *Dillon on Municipal Corporations* (5th ed.), secs. 1440, 1443, subsec. 8, p. 2569, and cases cited, *supra; McQuillan on Municipal Corporations*, secs. 2018, 204, 13-2045, 2088. Compare *Curtis v. Mactier*, 115 Md. 386, 395-398; *Prince George's County v. Laurel*, 70 Md. 443; *Burns v. Baltimore*, 48 Md. 198. (b) *Maryland Trust Co. v. Baltimore*, 125 Md. 40, 50; *Brooks v. Baltimore*, 48 Md. 265, 269. (a) Article 15 of Bill of Rights of Maryland. The disputed assessment is not for the reconstruction, rebuilding or enlargement of a sewer or water main upon which the land

affected abuts, nor does the new work, which is remote from the petitioner's property, in any appreciable sense constitute anything of value to the petitioner's property that was not subsisting before the installation of the new equipment. At the time the original mains of the sewer and water systems were laid, there accrued to the abutting lands as a result of these local improvements certain benefits which were almost exclusively peculiar to the adjoining lands. The improvements were permanent in character, and the benefits were received and enjoyed at the time of the installation, and the mere continuation of these identical benefits through the original mains along the contiguous lands is not another special benefit, but is for the general benefit and advantage of the entire sanitary district of over ninety square miles, and its occasion is "the unprecedented growth and spread of population within the Washington Suburban or Sanitary District."

The expense of these general improvements to existing public utilities are properly payable by the taxpayers of the whole political unit created for administrative purposes, and cannot be imposed as special benefits upon lands, abutting upon the original systems and already assessed therefor, by the expedient of either an administrative body or the Legislature calling the work a local improvement.

The unusual features of this record make particular decisions of other jurisdictions of slight value. By the test of sound and familiar legal principles, the action of the Legislature, to the extent of the question at issue, would seem to have been arbitrary and confiscatory, and, therefore, a plain abuse of its constitutional powers and so void.