Myron L. AHRENS, William P. Allen, Earl B. Amey et al., Appellants,

v.

M. T. BROYHILL, M. T. Broyhill, Jr., and Joel T. Broyhill, All Trading as M. T. Broyhill & Sons, Appellees.

No. 1678.

Municipal Court of Appeals for the District of Columbia.

Argued Sept. 19, 1955.

Decided Oct. 26, 1955.

Harry I. Rand, Washington, D. C., for appellants.

Oren R. Lewis, Arlington, Va., of the Virginia Bar, pro hac vice, by special leave of Court, with whom C. Wynne Tolbert, Arlington, Va., was on the brief, for appellees.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

On various dates beginning in 1950, Broyhill & Sons sold to various purchasers a large number of houses in a subdivision known as Langley Park, in Prince Georges County, Maryland. This action was brought in 1953 by 194 of the purchasers against the Broyhills, demanding a total of $207,799.20, for their alleged failure to "redeem" certain front-foot benefit charges which had been levied against the real estate. Plaintiffs based their claim on a provision in the sales contracts that defendants would convey title, "free and clear of all liens and indebtedness of every kind." Defendants' answer asserted that the identical claim had been decided in their favor in the United States District Court for the Eastern District of Virginia, in a class action brought in behalf of all property owners in the Langley Park subdivision; and also that the same claim had been made in a group of actions in the Circuit Court of Arlington County, Virginia, which actions were likewise decided in favor of defendants. A separate de-

fense—on which the case was decided below—was that the front-foot benefit charge involved was not a lien or indebtedness against the property, but on the contrary was a tax which had been prorated and adjusted at the settlement of each of the contracts; that at such settlement all matters including front-foot benefit charges were fully and completely adjusted and the settlements agreed to by each of the parties.

After a trial of several days' duration the trial court found that plaintiffs had failed to sustain their burden of proof and that there had been no promise or representation, as claimed by two of the plaintiffs, that the Broyhills would pay the front-foot charges. This appeal has been taken from the judgment which was entered in favor of defendants.

It seems necessary to recite the more important phases of the evidence. The front-foot benefit charges were levied against the various properties by the Washington Suburban Sanitary Commission, which is a municipal corporation operating in parts of Prince Georges and Montgomery Counties, Maryland, adjacent to the District of Columbia.[1] Plaintiffs called as a witness an official of the Commission who testified to the manner of assessing and collecting the charges. He said that they could be extinguished by a lump-sum payment to the Commission within one year, but admitted that the Commission usually looked to the present owner for payment of the current annual charges no matter how many times the property had changed hands. This was the essence of the testimony for plaintiffs.

Defendants presented several witnesses who testified that the benefit charges were treated as taxes to be prorated and adjusted at the settlement of each contract and that at the settlement all matters, including the front-foot benefit charges, were fully and completely adjusted without objection by the purchasers. Three witnesses stated that at the settlement of the contracts appellants advanced payment of the charges for the succeeding nine to twelve months, and that all papers, including the settlement sheets, were examined and accepted by appellants in writing without objection, some of them being present with their attorneys. All papers connected with the settlement were in evidence.

Two witnesses, one a member of the law firm which handled the settlements and the other an officer of the title company which examined the titles, testified that they considered the front-foot charges to be taxes, that they were so treated in all the transactions, and that they were collected as such. An officer of the lending agency which financed the purchases, testified that under the deeds of trust, signed by the purchasers, his company paid taxes and front-foot benefit charges due after the date of settlement, and charged the amount thereof to the principal of the trust to be paid by the purchasers. The letter of instructions and other settlement papers showed that the front-foot benefit charges here involved were handled in the manner just described.

In rebuttal one of plaintiffs testified that in signing the contract he relied on the statement of appellees' salesmen that there would be no assessment for "paving, curbing, sidewalks, and the like." But he admitted that at the time of settlement he inspected all the papers and that he read and understood the deed of trust requiring the purchaser to pay taxes. He also admitted that he or his wife had, after the settlement, paid the required charge to the lending company and that they had made no protest either to that company or to the Broyhills. Another plaintiff testified that he had been assured by a Broyhill representative, before signing the contract, that

1. Its creation and functions are described in Dahler v. Washington Suburban Sanitary Commission, 133 Md. 644, 106 A. 10, and Washington Suburban Sanitary Commission v. Noel, 155 Md. 427, 142 A. 634, appeal dismissed 278 U.S. 573, 49 S.Ct. 94, 73 L.Ed. 513. Union Realty Co. v. Ahern, D.C.Mun.App., 93 A.2d 84, 85.

charges for improvements and assessments "would be conveyed in the price of the home as charged to him" and that he therefore did not question the proration of taxes or make inquiry in regard thereto at the settlement. He said that it was not until after settlement that he brought the matter to the attention of the Broyhills and was then told that they disclaimed any liability for the charges. Defendants presented testimony directly denying the claim that representations or assurances as to the front-foot charges had been given to the purchasers in behalf of the Broyhills.

█ We find no error in the finding that plaintiffs had failed in their burden of proof. In order to prevail it was incumbent on plaintiffs to establish that the front-foot charges of which they complained did in fact constitute a lien indebtedness affecting the title to the properties conveyed to them. Concerning this there was no direct proof of any kind. No witness testified that the charges were treated as liens or similar "indebtedness," or were so considered by any party to the transactions; nor was this established by any of the various documents in evidence. The defendants' evidence recited above was clearly to the effect that such charges were usually not regarded as liens but were adjusted to date of settlement, and that such was done with the consent of all parties to this group of transactions.

Plaintiffs relied on the laws creating and governing the Sanitary Commission. But in such laws we find no clear provision that charges such as these are to be regarded as liens, and nothing to impose liability therefor against a grantor after completion of a sale. See District Title Ins. Co. v. United States, infra. It will be recalled that the Maryland official testified that the Commission usually looked for payment of the current annual charges to the current owner, regardless of previous ownerships. Hence the Commission laws, considered alone or in conjunction with the evidence, by no means compelled a ruling in favor of plaintiffs.

█ Thus the case seems to have resolved itself into questions of fact, particularly as to conduct and course of dealings between the parties, from the start of the transactions until their culmination in the acceptance by all parties of the settlement terms and the deeds of conveyance. Accepting defendants' version, as the trial judge had a right to do, it naturally followed that, defendants having paid the charges up to date of settlement, they were under no additional or continuing obligation to pay for future periods. What we have said also answers a separate contention advanced by plaintiffs: that before the signing of the contracts and by way of inducement, certain representations and assurances had been made in behalf of the sellers that they the sellers would pay the front-foot charges. On this point there was charge and denial, and the trial judge had a right to accept the denial.

█ Even if the case were to be determined as a matter of law, plaintiffs' position would be no better. There are no reported cases in Maryland on this subject. But in this jurisdiction it has twice been decided that the Maryland front-foot benefit charge is a lien on real estate only to the extent of the annual charges. District Title Ins. Co. v. United States, 83 U.S. App.D.C. 335, 169 F.2d 308; Union Realty Co. v. Ahern, D.C.Mun.App., 93 A.2d 84. The same conclusion has been reached in Virginia. Littlehales v. Broyhill, D.C., E. D.Va., Civ.A. 723, opinion of Bryan, J., not reported.

█ There remains for discussion a question of admissibility of evidence. Appellants say it was error to admit testimony as to the way the charges were treated at the settlement and agreed to by the purchasers. They ask us to rule that the evidence was immaterial. But it seems clear that such testimony was directly relevant in support of one of the separate defenses set out in the answer, to the effect that plaintiffs had accepted and agreed to the settlement. Ordinarily any evidence logically probative of some fact in issue is admis-

sible. Bogorad v. Kosberg, D.C.Mun.App., 81 A.2d 342. Nor can we agree with the contention that the evidence was violative of the parol evidence rule. It did not vary or purport to vary the terms of the original contracts of sale. It revealed how the parties regarded the status of the front-foot charges and how they agreed on adjustment and proration at the final settlement. The testimony was admissible on the theory of an account stated. Interstate Engineering Co. v. District of Columbia, 72 App.D.C. 152, 112 F.2d 214; Lincoln v. Virginia Portland Cement Co., 49 App. D.C. 33, 258 F. 505; Gordon v. Frazer, 13 App.D.C. 382. · It was also admissible to show the general knowledge and conduct of the parties and their intent to be bound by the terms of a settlement voluntarily arrived at.

· Affirmed.